**Somboon RUENKAMOL, Plaintiff,**

v.

**Dr. Laurence D. STIFEL and Dell C. Stifel, his wife, Defendants.**

Civ. A. No. 77–2162.

United States District Court,
D. New Jersey.

Dec. 29, 1978.

Philip B. Papier, Jr., Princeton, N. J., for plaintiff.

William J. Brennan, III, Smith, Stratton, Wise & Heher, Princeton, N. J., for defendants.

Griffin B. Bell, Atty. Gen. of the U. S., by Joseph M. Woodward, U. S. Dept. of Labor, Washington, D. C., for intervenor.

OPINION

BARLOW, Chief Judge.

This action was brought by plaintiff, Somboon Ruenkamol, against her former employers, Laurence D. and Dell C. Stifel, for unpaid minimum wages and an additional equal amount as liquidated damages under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–216 (as amended) (hereinafter cited "FLSA"). For the purpose of this motion only, defendants concede that plaintiff was employed as a live-in domestic servant from September 1974 to October 1977 and that during that time she received less than the minimum wage required by § 6(f) of the FLSA, 29 U.S.C. § 206(f). We have subject matter jurisdiction over plaintiff's action under § 16(b) of the FLSA, 29 U.S.C. § 216(b).

Presently before the Court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to *Fed.R.Civ.P.* 12(b)(6). Defendants contend that the FLSA, as amended by § 7 of the Fair Labor Standards Amendments of 1974, P.L. 93–259, 88 Stat. 55, is unconstitutional because the extension of the minimum wage and hour provisions of the FLSA to household domes-

tic employees exceeds Congress' power to legislate under the commerce clause of U.S. Const. Art. I, § 8, cl. 3. Pursuant to *Fed.R. Civ.P.* 24(c) and 28 U.S.C. § 2403(a), we certified to the Attorney General of the United States that the constitutionality of a federal statute had been challenged, and the United States filed with this Court a memorandum of law in opposition to defendants' motion.

It is well established that Congress has plenary power to regulate commerce among the states. *E. g., National League of Cities v. Usery,* 426 U.S. 833, 840, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). The commerce clause allows Congress to regulate both instrumentalities of, and articles which pass through, interstate commerce, *see, e. g., Champion v. Ames [The Lottery Case],* 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 (1903), and those apparently intrastate or local activities which have an effect on commerce. *E. g., United States v. Darby,* 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). It is this latter category with which we are presently concerned.

Congress, in extending the coverage of the FLSA to include household domestic servants, specifically found as a basis for its action that "the employment of persons in domestic service in households affects commerce". Fair Labor Standards Amendments of 1974, § 7(a), 29 U.S.C. § 202(a). Although we are not required to accept Congress' finding merely because it is a Congressional finding, our task as a court sitting in review of an act of Congress is nevertheless the limited one of determining whether or not Congress had any rational basis for its finding that the activities of household domestic employees affects commerce. *See Maryland v. Wirtz,* 392 U.S. 183, 190, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), *overruled in part on other grounds in National League of Cities v. Usery, supra,* 426 U.S. at 852–55, 96 S.Ct. 2465 (1976); *Katzenbach v. McClung,* 379 U.S. 294, 303–304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). We think that Congress had such a rational basis.

The United States, in its Memorandum of Law, suggests four ways in which Congress rationally believed that the wages and hours of domestic employees affects commerce. Although each supports the statute to a varying degree, two are particularly worthy of mention. Firstly, the extension of coverage to these employees will increase their purchasing power in the economy, thus increasing demand for articles of commerce. *See, e. g., Fry v. United States,* 421 U.S. 542, 547, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975). Secondly, as the extension of coverage makes household domestic employment more appealing to more and better individuals, potential employers of domestic employees will in fact employ domestic servants, and thus be freed to engage in commerce. *See* Memorandum of Law of United States at 15–17; H.R.Rep. No. 93–913, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 2811, 2842–45. We think that the above makes clear that there was ample basis for Congress' determination that the wages and hours of domestic household employees affects commerce.

Defendants, however, argue that intrastate or local activities are subject to commerce clause regulation only if they have a substantial effect on commerce, citing *United States v. Darby, supra,* and *N. L. R. B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893 (1937), and that domestic employees have no such effect on commerce. We must reject this contention. It is a well settled principle of constitutional law that commerce clause regulations are proper so long as, in the aggregate, the class of activity regulated affects commerce. That the contribution of any one member of the class would appear to be de minimus is irrelevant. *See, e. g., National League of Cities, supra,* 426 U.S. at 840, 96 S.Ct. 2465; *Fry, supra,* 421 U.S. at 547, 95 S.Ct. 1792; *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In *Wickard,* for example, federal regulations limited the amount of wheat which could be planted by any individual farmer. The regulations not only restricted the amount of wheat which could be plant-

ed for commercial marketing, but also the amount which could be grown for home consumption, on the ground that such activity affected total demand for wheat in the market. The Supreme Court rejected the challenge of an individual farmer who had been fined for planting more than his allotted 11.1 acres of wheat. The Supreme Court stated:

> the effect of the statute before us is to restrict the amount which may be produced for market and the extent as well to which one may forestall resort to the market by producing his own needs. That appellee's own contribution to the demand for wheat may be trivial by itself is not enough to remove him from the scope of federal regulation where, as here, his contribution, taken together with that of many others similarly situated is far from trivial.

317 U.S. at 127–28, 63 S.Ct. at 90. *See also Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

Based on the foregoing, we believe that the act is within the commerce power and that therefore defendants' motion should be denied. In accord with this decision are *Blakeney v. Walton,* Civ.Act.No. C–76–603–S (May 2, 1978) (M.D.N.Car.) and *Bonnette v. California Health and Welfare Agency,* 414 F.Supp. 212 (N.D.Cal.1976), two recent district court opinions addressing this exact issue.

Plaintiff will submit an appropriate order.