Ray **MARSHALL**, Secretary of Labor, United States Department of Labor, Appellant,

v.

Mrs. Bennett S. (Sally Abney) ROSE, Appellee.

No. 79–1140.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1980.

Decided Feb. 26, 1980.

Joseph Woodward, U. S. Dept. of Labor, Washington, D. C. (Bobbye D. Spears, Regional Sol., Atlanta, Ga., Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Lois G. Williams, U. S. Dept. of Labor, Washington, D. C., on brief), for appellant.

H. Grady Kirven, Anderson, S. C. (John A. Michaels, Watkins, Vandiver, Kirven, Gable & Gray, Anderson, S. C., on brief), for appellee.

Before WINTER and PHILLIPS, Circuit Judges, and STAKER, District Judge.*

WINTER, Circuit Judge.

The Secretary of Labor brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, to enjoin the defendant, Mrs. Bennett S. Rose, from violating the Act's minimum wage, overtime, and record-keeping provisions, and to secure the payment of back wages in amounts required by the Act. Defendant admitted to violations and paid the back wages due her

housekeeper, cook, butler, and chauffeur, but moved for summary judgment with respect to three men who work as night watchmen on her estate. The district court granted summary judgment for defendant, ruling that the watchmen are not "employees in domestic service" within the meaning of the Act, 29 U.S.C. § 202(a). We reverse.

I.

Defendant owns a five-acre estate in Anderson, South Carolina, where she and her husband reside, but the two spend a number of months each year away from the premises. The principal duty of the three men employed as night watchmen is to patrol the buildings and grounds four times each night, to guard against intruders or fire, notice if anything is amiss, and check for electric or mechanical problems. The men work alone, but two are employed at any given time, working 12 hour shifts, 7 nights per week, every other week, for $150 per month gross pay. They are "on call" while on duty, but the watchmen may eat, watch television, and sleep in the estate's barn-warehouse when at work. On patrol, the men check the buildings, windows, faucets, and doors, note if any furniture is out of place, and fill the fire extinguishers.

The three perform a number of other functions aside from watching the estate: they mend broken tools, call for repairmen to fix appliances they find to be broken, fertilize the garden, watch the grandchildren, and answer the telephone. When the Roses are at home, they may ask the watchmen to run errands for them, drive the maid or the cook home, or answer the telephone and inform them who is calling. The watchmen are also responsible for walking the dogs.

It is not disputed that a number of the duties performed by the men are domestic in nature. However, the district court held that their primary function is to guard the estate. The court said that the three only occasionally perform acts beyond the pur-

* Honorable Robert J. Staker, United States District Judge for the Southern District of West Virginia, sitting by designation.

view of their duties as watchmen, and such tasks as answering the telephone, ensuring the safety of grandchildren, and checking for mechanical or electrical failures were deemed to be acts in furtherance of their duties as watchmen.

## II.

■ The legislative history of the 1974 amendments extending the coverage of the Fair Labor Standards Act to domestic servants indicates that Congress sought to rely upon the generally accepted meaning of "domestic servant." H.R.Rep. No. 93–913, 93rd Cong., 2d Sess., U.S.Code Cong. and Admin.News, pp. 2811, 2845 (1974). The regulations promulgated under the statute state that the term "domestic service employment" refers to "services of a household nature performed by an employee in or about a private home." 29 C.F.R. § 552.3. The regulation lists a number of covered employees without including watchmen, but it notes that the listing is illustrative and not exhaustive. Caretakers, janitors, and handymen are named. We see no essential difference between the duties of these employees and those of a caretaker. The services rendered by these three employees relate to the maintenance and security of the estate, and they contribute to the Roses' comfort and peace of mind. Also, while on duty the three remain available to perform a number of admittedly domestic tasks which contribute to the personal wants and comforts of the defendant.

The legislative history further shows that Congress also looked to the Social Security Act for its definition of "domestic service." H.R.Rep. No. 93–913, 93rd Cong., 2d Sess. 35, U.S.Code Cong. and Admin.News, pp. 2811, 2845 (1974). Although the Social Security regulations do not specifically name watchmen in their illustrative list of domestic jobs, 20 C.F.R. § 404.1027(j), official interpretations of the Social Security Act have specifically included watchmen. The Claims Manual, § 1341.2, written to instruct the agency's Claims Examiners, and the Social Security Handbook, § 917, published for the information of the public, state expressly that domestic service includes work as a watchman. Furthermore, it has been held repeatedly that the Fair Labor Standards Act should be construed broadly in light of its remedial and humanitarian purpose. *Powell v. U. S. Cartridge Co.*, 339 U.S. 497, 516, 70 S.Ct. 57, 94 L.Ed. 490 (1950).

We therefore conclude that the three night watchmen on the Rose estate are "employees in domestic service" covered by the Act.

## III.

■ Defendant contends that regulation of the employment of watchmen on her private estate is an unconstitutional extension of Congress' power beyond the scope of its authority under the Commerce Clause. We see no merit in this contention. Congress has broad powers to regulate even wholly intrastate activity when the activity, combined with conduct of others similarly situated, affects commerce. *Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975). The fact that activity of a particular household may have only a trivial effect on interstate commerce does not remove the activity from the reach of federal regulation, since Congress may consider the cumulative impact of similar units. *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). The constitutionality of a statute promulgated under the authority of the Commerce Clause is presumed, and the legislative judgment will not be disturbed if Congress had a rational basis for finding that the regulated activity affects commerce. *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1974).

The Secretary of Labor furnishes several sets of facts to sustain the legislation: regulation of the wages and hours of domestic employees will 1) increase the purchasing power of those employees, 2) affect the demand for goods moving in interstate commerce which are used in connection with household service, 3) free members of households employing domestic servants to travel and spend, and 4) reduce the likeli-

hood of strikes. In Section 2(a) of the 1974 amendments, Congress specifically found that the employment of persons in domestic service affects commerce, and we find its conclusion regarding over one million workers to be rational. *See* H.R.Rep. No. 93–913, 93rd Cong., 2d Sess., U.S.Code Cong. and Admin.News, pp. 2811, 2842 (1974).

We reverse the judgment of the district court and remand the case for entry of judgment for the Secretary and further proceedings to effectuate that judgment in accordance with this opinion.

REVERSED AND REMANDED.