UNITED STATES of America,
Plaintiff-Appellee,

v,

DYE CONSTRUCTION COMPANY, a corporation, Defendant-Appellant.

No. 74–1176.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 11, 1974.

Decided Jan. 29, 1975.

Alan A. Armour, Hoffman, Goldstein, Armour & Lonnquist, P. C., Denver, Colo. (Abe L. Hoffman, Hoffman, Goldstein, Armour & Lonnquist, P. C., Denver, Colo., on the brief), for defendant-appellant.

Robert E. Courtney, III, Atty., Dept. of Justice (John L. Murphy, Chief Government Regulations Section, Crim. Div., Dept. of Justice, of counsel: James L. Treece, U. S. Atty., Robert R. Marshall, Jr., Asst. U. S. Atty., Michael H. Levin, Counsel for App. Litigation and Helen Schuitmaker, Atty., Dept. of Labor, on the brief), for plaintiff-appellee.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Following the death of a workman in a trench cave-in, the appellant was charged with willfully failing to shore, sheet, brace, slope and otherwise support by means of sufficient strength sides of trenches in unstable or soft material sufficient to protect employees working within the trenches, five feet or more in depth. The cause which arose under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.[1] was tried to a jury.

The incident which gave rise to the problem presented here occurred on Au-

1. Section 655 of the Act authorizes the Secretary of Labor to promulgate regulations to insure that employees covered by the Act are provided with a place of employment that is free from recognized hazards that are likely to cause death or serious bodily harm.

Section 666(e) states:

Any employer who willfully violates any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,-000 or by imprisonment for not more than six months, or by both; . . .

The Secretary's regulations are published at 37 Fed.Reg. 27,552–55 (1972). Section 1926.-652 of the regulations gives the specific trenching requirements. Section 1926.652(b) provides:

Sides of trenches in unstable or soft material, 5 feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them. See Tables P–1, P–2 . . .

gust 11, 1972 while Dye Construction Company was laying pipe for a sanitary sewer line. In the crew were the foreman, LaVerne Strain, the back hoe operator, Joe Sanchez, and the man on top was Joe Cruz, whose duty was to look for signs of cave-ins. One John Rosado was the head pipe layer. The assistant pipe layer was Jose Frank Esquibel. The procedure in laying the pipe consisted of having the back hoe excavate a trench which was approximately 9–12 feet in depth. At the bottom it was approximately 38–40 inches wide. Both sides rose vertically from the bottom for approximately five feet and after that were slightly sloped out to the surface where the width was 7½ feet. Messrs. Rosado and Esquibel were required to work at the bottom of the trench so as to fasten the pipe together. On the day in question, the side of this trench caved in killing Mr. Esquibel. Mr. Rosado was knocked aside and escaped injury.

C. E. Babcock, the superintendent of the project, testified that he had not made any decision as to whether the trench was to be shored. This decision had been delegated to Mr. Strain, the foreman. Mr. Strain, in turn, delegated the decision to Mr. Sanchez who said that he decided whether to shore or slope on the basis of the condition of the soil. He would shore if safety required it. He, together with Strain and Babcock, were all familiar with the regulations of the Secretary of Labor.

There was a trench box on the site which was designed to protect workers in the trenches, but it was not in repair.

In seeking reversal appellant urges a number of points. These include:

1. The insufficiency of the case in law and fact. The contention is that Dye was not required to shore or slope the trench primarily because the material involved was shale. It is said that this was exempt from the requirement of shoring under the applicable regulations.

2. It is said that the jury did not follow the court's instruction in regard to willfulness and with regard to sloping in shale.

3. That the court used the wrong definition of willfulness; a second facet of this contention is that the corporation could not be found guilty of willfulness unless some of its employees were willful; a third facet was that the evidence did not establish willfulness in any criminal sense.

4. It is said that the statute of limitations provided in 29 U.S.C. § 658(c) was applicable and the action was barred.

5. That the Dye Company was not engaged in commerce.

6. That it was error to receive evidence of other actions or offenses.

I.

## WHETHER THE DYE COMPANY WAS EXEMPT FROM SHORING OR SLOPING THE TRENCH

It is undisputed that the bottom five feet of the trench were not shored. The Secretary's regulation requires that the sides of trenches in unstable or soft material five feet or more in depth be shored, sheeted, braced, sloped and otherwise supported. In determining whether the evidence supported the jury's finding that the trench was dug in unstable or soft material, we view the evidence in a light favorable to the government.[2]

The trial court instructed the jury as to the meaning of unstable or soft material as follows:

"Unstable soil"—Earth material, other than running, that, because of its nature or the influence of related conditions, cannot be depended upon to remain in place without extra support, such as would be furnished by a system of shoring. 37 Fed.Reg. at 27,555.

2. United States v. Spoonhunter, 476 F.2d 1050, 1056 (10th Cir. 1973); United States v. Addington, 471 F.2d 560, 563 (10th Cir. 1973);

Havelock v. United States, 427 F.2d 987, 988–89 (10th Cir.), cert. denied, 400 U.S. 946, 91 S.Ct. 252, 27 L.Ed.2d 251 (1970).

■ The government's expert, Mr. Frank Holiday, the consulting engineer specializing in soil mechanics, testified that the material in which the trench was dug was a very soft bedrock; that it could be scratched with fingernails and cut with a knife; and that it was fractured in many directions. He said that the trench should have been cut on a 1:1 slope or 45 degrees. This evidence sufficiently supports the verdict, but the appellant maintains that the court should have directed a verdict because the regulations contain an exception in favor of shale. Section 1926.652(b) refers the reader to Tables P–1 and P–2. 37 Fed. Reg. 27,554 (1970). Table P–1 depicts trenches and shows various kinds of soil. A slope of 90 degrees is shown as appropriate for solid rock, shale or cemented sand and gravels.[3]

It is clear from the evidence that the material in question was not solid rock, hard shale or hard slag. The mere fact that it was called shale is not a basis for giving it exempt status.

Clearly, the Tables are illustrative and are not capable of overriding the regulation, § 1926.652(b). Nevertheless, the question is whether the trench was dug in unstable or soft material regardless of whether it could be included in the generic class of shale. Thus, reading the regulations as a whole, it must be concluded that in order for material to be exempt shale it would have to be hard. Otherwise the regulation would furnish no protection for a workman. It follows then that Dye was not exempt from shoring even shale if the material was not hard, and the jury was at liberty to find that the regulations were violated regardless of whether the material was shale if it was material which because of lack of hardness required shoring.

We must conclude then that the judge did not err in allowing the jury to decide the question whether the trench was dug in unstable or soft material within the meaning of the regulations. It follows also that the jury's determination was supported by the evidence.

## II.

## WHETHER THERE WAS WILLFULNESS

The entire thrust of the Dye argument here is that the jury should have been instructed that willfulness in terms of intent to do the act knowingly and purposefully is not enough; that an evil motive is an essential element. The instruction given reads as follows:

> The failure to comply with a safety standard under the Occupational Safety and Health Act is willful if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally.

The Supreme Court and our court have recognized that willfulness has different meanings when used in different contexts. See Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943); United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); Nabob Oil Co. v. United States, 190 F.2d 478, 479 (10th Cir.), cert. denied, 342 U.S. 478, 72 S.Ct. 167, 96 L.Ed. 658 (1951).[4] The distinction which is usually drawn in defining willfulness is between crimes in which moral turpitude is required and those which do not demand a moral taint. See Ryan v. United States, 314 F.2d 306 (10th Cir. 1963) and Inland

---

3. Footnote 1 under Table P–2 states that "shoring is not required in solid rock, hard shale, or hard slag."

4. In the *Nabob* case we said:

   In some penal statutes the word willful means that the offense must be committed malevolently, with a bad purpose or an evil mind. These offenses ordinarily involve moral turpitude but in those statutes denouncing acts not in themselves wrong, such an evil purpose or criminal intent need not exist. It is sufficient if the act was deliberate, voluntary and intentional as distinguished from one committed through inadvertence, accidentally or by ordinary negligence.

Freight Lines v. United States, 191 F.2d 313 (10th Cir. 1951). The Supreme Court has also given effect to this distinction. *See* for example United States v. Illinois Central R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773 (1938), wherein it was said:

In statutes denouncing offenses involving turpitude, "wilfully" is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. *Id.* at 242, 58 S.Ct. at 535.

Perhaps a very clear example of this distinction appears in Spies v. United States, *supra*, wherein the Court considered the difference between failure to file an income tax return and tax fraud which involves moral turpitude. In the tax fraud case the Court said "willfulness" includes evil motive, but in the charge of failure to file no such element is necessary. Many other cases have recognized this distinction. Examples include United States v. Consolidation Coal Co., 504 F.2d 1330 (6th Cir., 1974); United States v. Fidanian, 465 F.2d 755 (5th Cir.), cert. denied, 409 U.S. 1044, 93 S.Ct. 540, 34 L.Ed.2d 494 (1972); Steere Tank Lines v. United States, 330 F.2d 719 (5th Cir. 1963); Riss & Co. v. United States, 262 F.2d 245 (8th Cir. 1958); Stein v. United States, 153 F.2d 737 (9th Cir. 1946); Zimberg v. United States, 142 F.2d 132 (1st Cir. 1944); Boone v. United States, 109 F.2d 560 (6th Cir. 1940).

Dye cites our decision in Dearing v. United States, 167 F.2d 310 (10th Cir. 1948). It generally states that

When the word "wilfulness" is used in a penal statute, more is required than the mere doing of the act proscribed. It generally means an act done with a bad purpose, without justifiable excuse. Id. at 312.

But this decision did not reach the distinction between moral turpitude offenses and those which do not involve the moral aspect. In that case the trial court had determined that the doing of the act alone was sufficient and had excluded all evidence as to lack of willfulness and thus the language in the opinion has to be judged in the light of this fact.

■ At bar neither the statute nor the regulation requires that there be moral turpitude. The object of these provisions is prevention of injury or death and its application is not limited to the situation in which the employer entertained a specific intent to harm the employee.

■ Finally, we disagree with appellant there there is no evidence of willfulness since Messrs. Babcock, Strain, Cruz and Sanchez all had observed the trench prior to the accident, and although they all testified that the material was hard rock and not an unstable soft material the jury was not bound by their assertions as to their mental condition. It was within the province of the jury that these employees had disregarded the regulations in that they had been guilty of gross indifference to the hazard. We find no merit in the further contention that the corporation cannot be guilty of willfulness based on the acts, conduct and inferentially the states of mind of the employees. Contrary to Dye's argument, the president is not the only individual whose state of mind would be relevant. The cases recognize that corporations are responsible for the acts and omissions of their authorized agents acting in the scope of their employment. United States v. A & P Trucking Co., 358 U.S. 121 (1958); New York C. & H. R.R. v. United States, 212 U.S. 481 (1909); Riss & Co. v. United States, *supra*. There is no doubt as to the authority of the superintendent, the foreman and the back hoe operator.

## III.

## APPLICABILITY OF THE STATUTE OF LIMITATIONS

The indictment herein was returned November 9, 1973 which is in excess of six months after the alleged violation. Section 9 of the Act, 29 U.S.C. § 658(c), provides: "No citation may be issued un-

der this section after the expiration of six months following the occurrence of any violation." The question is whether this provision applies to a criminal prosecution such as we have at bar. Defendant maintains that it does. The government's position is that this is a specific limitations provision which applies only to the citation procedure and further argues that criminal prosecutions are subject to the five-year limitation set forth in 18 U.S.C. § 3282.

█ Unquestionably the six-month requirement does not by its terms extend to anything other than the issuance of the civil citation provided by § 9 of the Act, 29 U.S.C. § 658. This section makes provision for the issuance by the Secretary of a citation based upon investigation giving rise to the finding that a violation has occurred. The employer responds to this and a hearing is held pursuant to 29 U.S.C. § 659(c) before the Occupational Safety and Health Review Commission. The Commission is empowered to assess only civil penalties. Therefore, although this procedure is penal in its nature it is not a criminal prosecution. It is basically an administrative proceeding and it exists independently of the criminal prosecution. Accordingly, there is every reason to limit the six-month provision to the citation procedure and not to extend it to the criminal prosecution which has its own limitations provision.

## IV.

### WHETHER THE DEFENDANT ENGAGED IN A BUSINESS AFFECTING COMMERCE

█ The use of the words "affecting commerce" tells us that it was the intent of Congress to exercise fully its constitutional authority under the commerce clause. See Polish National Alliance v. NLRB, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944); Brennan v. Occupational Safety and Health Review Comm'n, 492 F.2d 1027 (2d Cir. 1974). Congress found that personal injuries and illnesses arising out of work impose a substantial burden and are a hindrance to interstate commerce in terms of lost production, wage loss, medical expenses and disability compensation payments. 29 U.S.C. § 651. Since Congress is authorized under the commerce clause to regulate the incidents of interstate commerce, it would appear that the present activity is within its authority unless Dye's relationship to commerce was minimal. The record shows that it has purchased several items of heavy equipment, trucks and several insurance policies produced by out of state sources. The use of supplies which are part of commerce has been held sufficient. See Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 11, 13 L.Ed.2d 20 (1964) and Von Solbrig Hospital, Inc. v. NLRB, 465 F.2d 173 (7th Cir. 1972). Since it is irrelevant then whether Dye itself was engaged in commerce, we are constrained to hold that its activities are such as to justify the regulation in question.

## V.

### WHETHER IT WAS ERROR TO RECEIVE SIMILAR TRANSACTIONS

█ Dye objected to receipt by the trial court of evidence of inspections of Dye's trenches in the same general area by a safety inspector for the State of Colorado. These occurred 10 or 11 days before the accident and citations were issued for failure to shore or slope trenches. Colorado regulations require shoring or sloping in trenches of more than five feet in depth to the "proper angle of repose," which is 1:1 (45°). The state permits vertical sloping for hard rock, but not necessarily for shale. The trial court ruled that the transactions were sufficiently related in time to justify receipt of the evidence. At the same time, it carefully instructed the jury giving limiting charges as to these transactions. The court told the jury that they were offered only as bearing on the element of willfulness as opposed to accident or negligence. Such evidence can be received insofar as it tends to prove motive, opportunity, intent, knowledge, identity or absence of mistake, inadvert-

ence or accident. *See* United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973), cert. denied, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed. 286 (1974); United States v. Parker, 469 F.2d 884, 889 (10th Cir. 1974); United States v. Burkhart, 458 F.2d 201 (10th Cir. 1972); Holt v. United States, 404 F.2d 914 (10th Cir. 1968), cert. denied, 393 U.S. 1086, 92 S.Ct. 292, 30 L.Ed.2d 257 (1968); Rothering v. United States, 384 F.2d 385 (10th Cir. 1967); Morgan v. United States, 355 F.2d 43 (10th Cir.), cert. denied, 384 U.S. 1025, 86 S.Ct. 1976, 16 L.Ed.2d 1029 (1966); Tandberg-Hanssen v. United States, 284 F.2d 331 (10th Cir. 1960). From a reading of these cases we believe that the trial court ruled correctly; that a ruling that the evidence was relevant was correct.

The judgment of the district court is affirmed.