628 F.2d 1226
 8 O.S.H. Cas.(BNA) 2060, 1980 O.S.H.D. (CCH) P 24,833
W. J. USERY, Jr., Secretary of Labor, Petitioner,
v.
Franklin R. LACY (Aqua View Apartments), and Occupational
Safety and Health Review Commission, Respondents.
 No. 76-2201.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 15, 1979.
Decided Sept. 24, 1980.
 
 Diane Burkley, Washington, D.C., for petitioner.
 Franklin R. Lacey, William McLaughlin, Washington, D.C., for respondents.
 On Petition to Review an Order of the Occupational Safety and Health Review Commission.
 Before TRASK and KENNEDY, Circuit Judges, and KELLEHER,* District judge.
 KENNEDY, Circuit Judge:
 
 
 1
 This appeal presents the question whether an employer can be cited for violating the Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651-678 (1976), in the course of constructing a medium-sized apartment building, or whether his contacts with interstate commerce are too attenuated or uncertain to bring him within the Act's coverage.
 
 
 2
 An administrative law judge dismissed the complaint against respondent on December 16, 1974, because the "Secretary has failed to meet his burden of proving that Respondent was 'engaged in a business affecting commerce.' " (quoting 29 U.S.C. § 652(5) (1976)). Franklin R. Lacy, 4 O.S.H.C. (BNA) 1115 (1974). The Occupational Safety and Health Review Commission (OSHRC) affirmed this dismissal on April 5, 1976, with Commissioner Cleary dissenting. The Secretary of Labor petitioned this court, pursuant to 29 U.S.C. § 660(b) (1976), to set aside the decision of the OSHRC on the jurisdictional issue and to remand the case for a decision on the merits. The employer in this case employed approximately forty workers for the construction of a fifteen-unit apartment building. The OSHRC held that, under the facts of the case, the employer was not shown to be engaged in a business affecting commerce. We think that interpretation of OSHA is not in accordance with law, and therefore reverse. See Titanium Metals Corp. v. Usery, 579 F.2d 536, 540 (9th Cir. 1978).
 
 
 3
 It may be helpful to contrast here two of the principal formulations of statutory jurisdiction that have evolved from the congressional history of regulating the employment relation. If a statute covers businesses "in commerce," a fairly specific showing must be made of a connection between the particular employer regulated and interstate commerce. See, e. g., Fair Labor Standards Act, 29 U.S.C. § 201 et seq., (1976). See Mitchell v. Lublin, McGaughty & Assocs., 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959); A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); Houser v. Matson, 447 F.2d 860 (9th Cir. 1971); Wirtz v. Idaho Sheet Metal Works, Inc., 335 F.2d 952 (9th Cir. 1964). This is the interpretation apparently followed by the OSHRC in the instant case, inasmuch as it focused on the allegations and proof concerning whether the employer used materials and tools supplied by interstate manufacturers.[1]
 
 
 4
 On the other hand, a statute may require only that the particular business "affect" commerce. See, e. g., National Labor Relations Act, 29 U.S.C. §§ 151 et seq. OSHA is a statute which employs this formulation. In such cases there is statutory jurisdiction so long as the business is in a class of activity that as a whole affects commerce. NLRB v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963); Polish Nat. Alliance v. NLRB, 322 U.S. 643, 647-48, 64 S.Ct. 1196, 1198-99, 88 L.Ed. 1509 (1944); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 34-39, 57 S.Ct. 615, 622-625, 81 L.Ed. 893 (1937). OSHA is an example of this broader jurisdiction, which covers the full reach of Congress' power under the commerce clause.
 
 
 5
 The regulations which implement OSHA state, essentially, that all employers are covered, with some specific exceptions, such as for those who employ domestic help. See 29 C.F.R. §§ 1975.4, 1975.6 (1979). The coverage of the regulations is consistent with the congressional purpose to reach as broadly as constitutionally permissible in regulating employee safety, since nonuniform coverage would give unsafe employers a competitive advantage.[2] See S. Rep. No. 91-1282, 91st Cong., 2d Sess. 4 (1970), reprinted in Staff of Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, Legislative History of the Occupational Safety and Health Act of 1970 (S. 2193, P.L. 91-596), 92d Cong., 1st Sess. 144 (Comm. Print 1971) (hereinafter cited as Legislative History), reprinted in (1970) U.S. Code Cong. & Ad.News 5177, 5180. See also Legislative History at 343, 444, 854. We need not here decide whether the regulations are valid as to every conceivable instance of their application. It suffices to say that here the employer hired approximately forty workers for the construction of a fifteen-unit apartment building, and that is a business that affects commerce as a matter of law, for it is within the class of activities that it was Congress' intent to regulate, in extending the Act to employers whose activities in the aggregate affect commerce.[3] See Godwin v. Occupational Safety and Health Review Comm'n, 540 F.2d 1013 (9th Cir. 1976); United States v. Dye Constr. Co., 510 F.2d 78 (10th Cir. 1975); Brennan v. Occupational Safety and Health Review Comm'n, 492 F.2d 1027 (2d Cir. 1974) (Friendly, J.); Marshall v. Kraynak, 457 F.Supp. 907 (W.D.Pa. 1978), aff'd, 604 F.2d 231 (3rd Cir. 1979), cert. denied, 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980). Whatever might have been said about the correctness of cases such as Hiatt v. Schlecht, 400 F.2d 875 (9th Cir. 1968), at the time of their decision, their value as precedent is significantly eroded by the more recent cases in this and other circuits just cited.
 
 
 6
 Finally, we follow other recent decisions that have held Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), not retroactively applicable to enforce an exclusionary rule against OSHA for warrantless inspections. See Savina Home Indus. Inc. v. Secretary of Labor, 594 F.2d 1358 (10th Cir. 1979); Todd Shipyards Corp. v. Secretary of Labor, 586 F.2d 683 (9th Cir. 1978).
 
 
 7
 The decision of the OSHRC is therefore REVERSED and REMANDED for further proceedings not inconsistent with this opinion. The Review Commission may, in its discretion, consider whether the lapse of time between the violations and the date of this decision is a factor to be considered in mitigating the amount of the fines levied against Respondent. Each side shall bear its own costs of this appeal.
 
 KELLEHER, District Judge:
 
 8
 Respectfully, I dissent.
 
 I.
 
 9
 The result achieved by the majority is so patently wrong that any basis upon which it can be avoided seems desirable. The warrantless inspection of the job site made here by the OSHA inspector over the continued objection of Respondent Lacy should bring this case within the rule of Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), which proscribes warrantless inspections by OSHA's inspectors. Barlow's should have retrospective application in a case where, as here, the inspection was made over the continued protests by Respondent, at the time the inspection was made, of its unlawfulness, impropriety, and impermissibility. Lacy was merely a bit more prescient and perceptive than most; he anticipated the rule in Barlow's, and he told the inspector to cease and desist from the inspector's unlawful activities. The unfairness herein articulated is rendered no less fundamentally objectionable by the fact that the warrantless inspection in the case at hand came before, rather than after, Barlow's.
 
 
 10
 However, the protracted, drawn-out, and oppressive proceedings here involved are what constitute such an unwarranted burden upon Lacy and make unacceptable the result of holding him liable. It should be noted that Lacy assumed the burden of resistance when the inspector first came unlawfully upon the Respondent's premises and subsequently by filing an answer to the complaint brought by the OSHA inspector. He apparently concluded that the day was carried when the Administrative Law Judge dismissed the complaint approximately eighteen months after the unlawful inspection of the job site had been made. But Lacy offered no further defense and, when the matter came before the Occupational Safety and Health Review Commission, he made no appearance there and filed no opposition. Nevertheless, Respondent Lacy prevailed there also. It should be noted that when the Secretary of Labor petitioned this Court to set aside the decision of OSHRC, Respondent Lacy made no appearance in opposition, filed no brief, and offered no oral argument before this Court. This is clearly a case where a person, situated as Lacy, simply gave up to the vast power of the Federal Government (since only approximately $250.00 in fines was involved), and having made his position clear, let the matter pursue its course. In doing so, Lacy reflected some confidence that this Court would give appropriate attention to his fundamental rights. It is time we did so.
 
 II.
 
 11
 Lacy was not engaged in a business affecting commerce. As the Administrative Law Judge found, Lacy was in the business of owning, operating, and maintaining a small apartment building and was not a member of the "construction industry." Only incidentally, if at all, was he engaged in activities which, by the majority's broad-brush treatment, can be said in any way to involve interstate commerce, viz., he was making some additions under his own direction at his apartment building. This activity did not put him in a business "affecting interstate commerce"; rather, his business was owning, operating, and maintaining an apartment building.
 
 
 12
 The majority would hold that the employer's activity affects commerce as a matter of law, impliedly reasoning that Congress may reach all employers if it so chooses:
 
 
 13
 "It suffices to say that here the employer hired approximately forty workers for the construction of a fifteen-unit apartment building, and that is a business that affects commerce as a matter of law, for it is within the class of activities that it was Congress' intent to regulate, in extending the Act to employers whose activities in the aggregate affect Commerce." (majority opinion)Such a holding is fatally flawed in two respects. First, the majority's factual recital of the number of workers employed by Respondent is misleading as it relates to the scope of Respondent's enterprise. Respondent Lacy, in his appearance before the Administrative Law Judge, stated that at any one time he employed four to five people, most of whom were part-time employees. During the same proceedings, the OSHA inspector testified that Lacy employed eight workers. Finally, the Administrative Law Judge found that: "Most of the workmen (Lacy) hired were part-time employees and were students at the University of Washington in Seattle. There were probably eight employed on June 21, the day of the inspection by a representative of the Secretary."
 
 
 14
 Secondly, and more importantly, the majority's novel assertion that the nature and breadth of the Constitution's limitations upon the exercise of congressional power are determined by congressional intent in the exercise of such power finds no support in constitutional history. If the majority's assertion were indeed true, the entire constitutional basis of judicial review of congressional authority to enact statutes within the confines of its constitutionally-delimited power would evaporate.
 
 
 15
 The majority notes that the jurisdictional requirement of a business "affecting" commerce is employed in both the OSHA statute and the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. The majority then proceeds to cite a number of cases interpreting this phrase "business affecting commerce" as used in the National Labor Relations Act. The majority, however, neglects to consider Hiatt v. Schlecht, 400 F.2d 875 (9th Cir.1968) and E. B. Weber v. Hiatt, 424 F.2d 1366 (9th Cir.1970), two cases from this Circuit whose facts are so startingly similar to those of the case at hand as to be directly on point.
 
 
 16
 In Schlecht, this Court held that evidence showing only that plumbing fixtures used by an Oregon contractor were manufactured outside of Oregon was insufficient to establish federal jurisdiction over such contractor as being an "industry affecting commerce," where such contractor engaged in no construction activity outside of Oregon, purchased no materials from outlets outside of Oregon, and conducted no business with persons outside of Oregon. The Court noted:
 
 
 17
 "The record establishes the following with regard to (the contractor's) activities: He did not:
 
 
 18
 1) construct outside Oregon;
 
 
 19
 2) subcontract with contractors engaged in business outside Oregon;
 
 
 20
 3) purchase materials or supplies from persons outside Oregon;
 
 
 21
 4) contract with subcontractors outside Oregon;
 
 
 22
 5) do any business with any firm or company in any other states;
 
 
 23
 6) work on any federal, state, or political subdivision projects;
 
 
 24
 7) ever work on any defense projects;
 
 
 25
 8) perform work on a facility directly utilized for the purpose of interstate commerce."
 
 
 26
 400 F.2d at 877.
 
 
 27
 In that case we deemed the evidence insufficient to establish that the contractor was in an industry affecting commerce within the meaning of 29 U.S.C. § 185(a), noting "(t)his manifest lack of interstate contact, considered with the significant insufficiency of (plaintiff's) affirmative evidence on the jurisdictional question . . . ." Id. Thereafter, in E. B. Weber v. Hiatt, supra, this Court summarily affirmed a dismissal for lack of subject matter jurisdiction, holding that a contractor in a similar position to that of the contractor in Schlecht was not engaged in "activities affecting commerce."
 
 
 28
 All of the cases in this and other Circuits which have supported the broad reach of the Interstate Commerce Clause-and its application as set forth in the OSHA statute-have essentially involved activities directed to products which have moved, are moving, or are expected to move, in interstate commerce. None of these circumstances is present in the case at hand, and thus all of the cases upon which the majority relies are distinguishable from the facts herein.
 
 
 29
 Godwin v. Occupational Health and Safety Review Comm'n, 540 F.2d 1013 (9th Cir. 1973) involved safety citations for farm machinery used to clear land upon which grapes were grown for sale to wineries for use in producing wine which was then shipped out of state. The Godwin court relied heavily upon Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), in which the U.S. Supreme Court found the Agricultural Assistance Act of 1938-which attempted to control the volume of wheat moving in interstate commerce in an effort to stabilize supply and, correspondingly, price-applicable to wheat grown purely for home consumption. The Wickard court reasoned that "wheat consumed on the farm where grown, if wholly outside the scheme of regulation, would have a substantial effect in defeating and obstructing its purpose to stimulate trade therein at increased prices." 317 U.S. at 129, 63 S.Ct. at 91.
 
 
 30
 In applying Wickard to the facts in Godwin, this Court held that the activity of clearing land for the purpose of growing grapes is an activity which, if performed under unsafe conditions, will adversely affect commerce. Clearing land is an integral part of the manufacturing of wine which moves into the stream of interstate commerce, and therefore the activity of clearing land has a significant effect upon commerce. In the case before us, a person who owned and operated an apartment building was constructing an addition to increase its size by one-third, adding thirteen units. The apartment building which is the product of such construction activity is not a mere raw material, like grapes, which is to be converted into a final product to be shipped in interstate commerce. Rather, the final product is one which is inherently local in character-as evidenced by the fact that government regulation of the business of operating apartment buildings has been almost exclusively the province of states and municipalities through means such as housing codes. In short, then, the analogy of a manufacturing process characterized by a series of intermediate stages and products culminating in a final product which is then shipped in interstate commerce simply is not persuasive here. Similarly, since apartment buildings are not products which move in interstate commerce, the construction of such a building by a person whose business is owning and operating the building cannot be reached by a Wickard analogy to the effect that production for local use can skew the interstate flow of the product.
 
 
 31
 The majority also relies upon Brennan v. Occupational Safety and Health Comm'n, 492 F.2d 1027 (2d Cir. 1974) in which the Second Circuit found the "business affecting commerce" requirement was met where a sandblasting contractor supplied services, some on a long-term contract basis, to organizations which were all engaged in interstate commerce, and the contractor used supplies produced outside New York State although purchased from local suppliers. The Brennan court simply cited both of these factors and did not discuss the extent to which one or both would suffice to meet the test. Once again, the tie of the activity at issue, sandblasting, to a final product which entered the stream of interstate commerce-although more attenuated perhaps than in Godwin-is nonetheless discernible to the naked eye. The maintenance of a factory used to produce a good shipped in interstate commerce is as vital to the production process, and the free flow of such goods into commerce, as the purchase of raw materials used to create that final product. Thus construction of the apartment house in the case at hand-though analogous to Brennan in the sense that both involve construction activity-is nonetheless an activity wholly different in its relationship to interstate commerce because it provides no conceivable production input for a good moving into interstate commerce.
 
 
 32
 The second ground upon which the Brennan court relies to find a link to interstate commerce is the fact that the contractor used supplies produced out of state, even though such supplies had been purchased from local suppliers. Another of the cases relied upon by the majority in our case, United States v. Dye Construction Company, 510 F.2d 78 (10th Cir. 1975), also found the requisite effect upon interstate commerce where the contractor in question had purchased heavy equipment, trucks, and insurance policies from out-of-state sources. The majority in our case seems persuaded Petitioner Usery's argument that the use of supplies which have been part of interstate commerce is sufficient to establish the requisite effect on commerce. The problem here is that petitioner has failed to provide the factual showing necessary to sustain his contention.
 
 
 33
 Because, according to cases from other Circuits cited by the majority, the link to interstate commerce may be established by a mere showing that some of the tools and supplies used in the production process had once moved in interstate commerce, some might reason that the requisite link has been attenuated to the point of evanescence. Still, such an affirmative showing must be made if this mode of establishing the requisite link to interstate commerce is to have any substance at all. Petitioner has failed to sustain this burden as to any of the tools or supplies used in the construction of the apartment building at issue here. The Administrative Law Judge (ALJ) who conducted the basic factual inquiry and received "all of the evidence most favorable to the Secretary on the issue here under consideration" certainly was not convinced that Petitioner had sustained this burden, and she so ruled in dismissing the administrative complaint for lack of jurisdiction for failure to establish the requisite link of the construction activity in question to interstate commerce.
 
 
 34
 The relevant answers of Lacy to Petitioner's Interrogatories and transcript passages of the interrogation of Lacy by OSHA attorneys regarding Lacy's source of construction materials for the apartment building are vague and inconclusive-and obviously insufficient to establish that such items had been part of interstate commerce. As the ALJ noted in her opinion, Lacy's answer to Interrogatory No. 2-identify "the brand name of the materials, goods and machinery used by you"-was: "I think the lumber came from Weyerhaeuser. I don't know about the rest." During his interrogation by the OSHA attorneys, Lacy listed the local stores where he had purchased lumber and windows, although he was unsure as to which supplies were purchased from which local store. The OSHA attorney then inquired, "And do you recall the brand name of the lumber?" Lacy responded, "Weyerhaeuser, that is the only name I recall."
 
 
 35
 The "evidence" of the character of the tools and machinery used in the job exemplifies the vagueness and insufficiency of the facts upon which petitioner seeks to rely to establish the requisite link of respondent's activity to interstate commerce. The following is the entire body of evidence regarding the source of the tools and machinery:
 
 
 36
 " 'Q. Did you use saws and drills in the construction of this building?
 
 
 37
 A. Yes, I did.
 
 
 38
 Q. Can you recall what type of equipment that was, the brand name?
 
 
 39
 A. They are just saws that I already had from my hobby work.
 
 
 40
 Q. I am sure you are familiar with some brands, were they Craftsman, Black & Decker, Skill, or do you recall?
 
 
 41
 A. I believe one of the drills was a Craftsman drill and I believe I bought this saw from-I don't remember on the saw. It's a good sized one.
 
 
 42
 Q. You don't recall what the brand name was?
 
 
 43
 A. No, I have had them for some time. I could go home and look at them or call my wife if you want me to.' "
 
 
 44
 The ALJ's Opinion then goes on to note that:
 
 
 45
 "The Compliance Officer, Gilbert Saulter, after refreshing his collection from notes made at the time of the inspection, testified Respondent told him he had a Dodge station wagon and on occasion testified that he had never owned a Dodge or any other Chrysler product and that he had a Ford station wagon at the time. He used it on occasion to haul small amounts of material to the job but believed this to be after the time of the inspection by Saulter. It was a 'luxury' type wagon, used as a family car, and few building materials were ever hauled in it. Respondent bought it in Renton, Washington. * * *
 
 
 46
 Saulter also testified that 'Craftsman' is a brand name of Sears Roebuck & Company, and that he has seen both 'Craftsman' products and 'Dodge' vehicles in states other than Washington. He does not know where any are manufactured.
 
 
 47
 There is no other evidence about the origin, manufacture, processing, or movement of any other materials, tools or machinery which might be involved in the building process of Respondent. There is no additional evidence about any of the workmen except the last names of one or two. There is no evidence about the tenants of Respondent's apartment-either those existing or the one under construction-except that Respondent and his family lived in one. The foregoing evidence fails to meet the description of it set out by counsel in her brief :
 
 
 48
 'The building of an apartment building with the use of equipment, supplies and materials which traveled in interstate commerce are sufficient to show commerce coverage under the Act. The use of Weyerhaeuser lumber and Craftsman tools (distributed by Sears, Roebuck & Co.) by respondent clearly demonstrates that the building of Aqua View affected interstate commerce.' " (Emphasis added).
 
 
 49
 After noting that the OSHA counsel had failed, as a factual matter, to establish the requisite link to interstate commerce, the ALJ rejected Petitioner's request to take judicial notice of such a proposition:
 
 
 50
 "Counsel invites us to take 'judicial' (official) notice that Weyerhaeuser and Sears are engaged in interstate commerce; and thus the possession of one previously purchased 'Craftsman' drill and and a piece of plywood with the word 'Weyerhaeuser' on it placed Respondent in a position where he is 'engaged in a business affecting commerce.' We decline the invitation. We find no authority, including those cited by counsel, where courts have been upheld in taking judicial notice of of facts as conjectural as those requested here. And this is true whether such facts 'promote' Federal 'remedial legislation' or otherwise."
 
 
 51
 One must remember that the burden of demonstrating that raw materials and tools moved in interstate commerce, as a means of establishing that an activity using such products had the requisite link to interstate commerce, is precisely that-a burden. The Petitioner must make a sufficient affirmative factual showing of the necessary elements to sustain that burden, or he will have failed to establish one of the basic prerequisites to finding a violation of OSHA. Naked assertions, such as those urged by Petitioner, are not sufficient. The Court here must remember that the action before us is a review of a decision predicated upon a fact-finding inquiry conducted by an administrative agency with expertise and experience in the field. The Administrative Law Judge, before whom Petitioner's formal complaint against Respondent was tried, ruled that Respondent "was not engaged in a business affecting commerce within the meaning of the Occupational Safety and Health Act of 1970," and, accordingly, dismissed the complaint for lack of jurisdiction. Thereafter, the Occupational Safety and Health Review Commission, "having examined the record in its entirety," found that the Administrative Law Judge had properly decided the case and adopted his decision.
 
 
 52
 The case is before us for judicial review of the Commission's Order, as provided in 29 U.S.C. § 660. Section 660(a) provides that "(t)he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." (Emphasis supplied.) This Court has repeatedly recognized the validity of this narrow standard of review of the findings of the Occupational Safety and Health Review Commission. See, e. g., Titanium Metals Corp. of America v. Usery, 579 F.2d 536, 540 (9th Cir.1978); Hartwell Excavating Co. v. Dunlop, 537 F.2d 1071, 1073 (9th Cir.1976). Hartwell Excavating Co. further amplified this "substantial evidence" standard for judicial review:
 
 
 53
 "The mere fact that there was contradictory evidence on the crucial issues does not render the government's evidence insubstantial, and a review of the entire record demonstrates that there was, in support of the Commission findings, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . based on the record as a whole.' Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)." 537 F.2d at 1073.
 
 
 54
 Clearly, the findings of the Administrative Law Judge and of the Commission, as discussed above, are based on "relevant evidence which a reasonable mind might accept as adequate to support a conclusion, based on the record as a whole" that the requisite link between Respondent's activity and interstate commerce was not present.
 
 
 55
 As discussed above, the majority's holding that Respondent's activity affects interstate commerce as a matter of law is deeply flawed, both factually and as a matter of constitutional interpretation. Perhaps cognizant of this fatal weakness and of the insufficient factual showing by Petitioner under the judicial tests currently employed to identify "businesses affecting interstate commerce," the majority proffers a final-and equally flawed-basis for finding the requisite link between Respondent's activity and interstate commerce. In an argument understandably relegated to a footnote, the majority contends: "Respondent Lacy testified that he used material and tools manufactured by Weyerhaeuser and Craftsman (Sears Roebuck). The use of material that has at any point moved in interstate commerce is enough to establish that a business affects commerce, and it is appropriate to take judicial notice of the fact that Lacy's ultimate suppliers, Weyerhaeuser and Sears, are engaged in the production and distribution of goods for commerce."
 
 
 56
 The majority's attempt to take judicial notice of a factual proposal at the appellate level suffers from several defects. Although Fed.R.Evid. 201(f) has been construed as permitting the appellate court in some instances to notice facts not necessarily a part of the trial court record, 10 Moore's Federal Practice, § 201.60, II-43, "judicial notice should not be used as a device to correct on appeal an almost complete failure to present adequate evidence to the trial court." United States v. Campbell, 351 F.2d 336, 341 (2d Cir.1965), cert. den., 383 U.S. 907, 86 S.Ct. 884, 15 L.Ed.2d 662 (1965) (Emphasis added).
 
 
 57
 This latter principle is of particular moment where, as here, the appellate court is effectively preempting the normal course of a fact-finding procedure conducted by an administrative agency with expertise in the field. In the case at hand, the ALJ expressly declined to take judicial notice of "facts as conjectural as those requested here." The ALJ in effect ruled that petitioner had failed to present the necessary information to form a basis for judicial notice by the ALJ. See, Fed.R.Evid. 201(d). Here, as in Campbell, supra, Petitioner seeks to correct on appeal, by way of request for judicial notice, an almost complete failure to present adequate evidence to the fact-finder-as the fact-finder in our case so found. Thus, the majority seeks to subvert not only the ALJ's finding that the factual predicate for judicial notice was lacking, but indeed the majority seeks to substitute its view of the facts for that of the ALJ. It is not our function to make any such determination of what the evidence establishes. It is our function to review, within very closely-circumscribed boundaries, the findings of an administrative agency.
 
 
 58
 In Titanium Metals Corp. of America, supra, 579 F.2d at 540, n.2, we held that "(t)he standard of review under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), similarly applies to review of OSHRC decisions, (citations omitted). 'The reviewing court shall-. . . (2) hold unlawful and set aside agency action, findings, and conclusions, found to be-(a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .' " The factual findings by the Administrative Law Judge and the Commission that the tools and materials used by Respondent were not of proper character to provide the requisite link of the construction activity to interstate commerce, given the evidence discussed above, certainly cannot be deemed arbitrary, capricious, or an abuse of discretion.
 
 
 59
 Similarly, the findings of the Administrative Law Judge and the Commission that Respondent Lacy was not a member of the "construction industry" are not arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. Lacy was found to be "the owner, operator and manager of a small apartment building seeking by new construction to increase its size approximately one-third" and hence "was engaged purely in intrastate activity, with no affect (sic) on commerce whatever being shown. . . ." Consequently, the ALJ rejected Petitioner's contention that Respondent was in the "construction industry" and hence should be subject to the Act merely because failure to do so would give Respondent an improper competitive advantage over others in the construction industry. The ALJ found that while "(i)t may be the need for enforcement of job safety laws as to such employers is greater (here) than in the case of larger employers clearly subject to the Act (,) (s)uch a need-if it exists-is not evidence. Nor can it be substituted for the evidence necessary to hold Respondent was 'engaged in a business affecting commerce.' "
 
 
 60
 Petitioner, perhaps realizing that he had failed to make the requisite factual showing regarding the movement in interstate commerce of the tools and materials used by Respondent in his construction activity, argues that the requisite link of Lacy's activity to interstate commerce should be attenuated still further. Petitioner contends essentially that, even though Lacy is not producing products which flow into interstate commerce, even though Lacy is not producing raw materials which are combined with other materials to produce goods which then flow into interstate commerce, and even though the tools and materials which Lacy used in his construction activity may not themselves have come from the flow of interstate commerce, that because the companies which produce those tools and materials may do business in interstate commerce (although no evidence to sustain such a contention is present in the factual record before us), Lacy's construction activity-albeit being four times removed from interstate commerce-may still be reachable under OSHA as having an "effect" upon interstate commerce. Indeed, the import of this reasoning proffered by Petitioner is that this dissent, prepared as it is with instruments (dictating equipment, typewriters, pens, pencils, papers and the like) which may have been in the flow of interstate commerce or even been manufactured by companies which may do business in interstate commerce, may itself have the requisite link to such commerce as to make the judicial activity one which "affects interstate commerce" in a manner heretofore unrecognized. We should choose not to retreat to such a cloudy realm.
 
 
 61
 Accordingly, I would uphold the finding of the Administrative Law Judge and the Occupational Safety and Health Review Commission that the basic jurisdictional prerequisite to establishing a violation of the OSHA statute had not been made.
 
 
 
 *
 Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The Review Commission's policy of requiring the Secretary to prove an effect on commerce derives from two cases, Wilshire Terrace, 1 O.S.H.C. (BNA) 3053 (1973), and Les Mares, Enterprises, Inc., 3 O.S.H.C. (BNA) 1015 (1975), rev'd sub nom. Godwin v. OSHRC, 540 F.2d 1013 (9th Cir. 1976). The facts of Wilshire Terrace are not clear, but it appears that someone employed as a handyman by the owner-occupants of a co-op apartment building suffered an electric shock while fixing an air conditioner. To the extent that his employment was not in the course of a business of the conventional sort, and was more like a domestic activity specifically excluded from the Act's coverage, see 29 C.F.R. § 1975.6 (1979), the activity in the Wilshire case might or might not be one as to which a proper interpretation of the Act would allot to the Secretary the burden of proving a nexus with commerce. Since we hold that all who employ construction workers are covered by the Act, it follows that the Act does not permit the Review Commission to require the Secretary to show a specific effect on commerce by each employer cited for violating OSHA, because such a showing is irrelevant
 
 
 [2]
 In view of the fact that Congress may constitutionally regulate the wages of domestic servants by its power under the commerce clause, see Marshall v. Rose, 616 F.2d 102 (4th Cir. 1980), any argument that regulation of the safety conditions of employees building an apartment is beyond the national legislature's constitutional reach would be frivolous
 
 
 [3]
 We construe 29 C.F.R. § 2200.33(a)(2)(i) (1979) consistently with our interpretation of the jurisdiction of the Act to mean that the "jurisdictional basis" the Secretary is to allege is the employer's engaging in an activity which, in the aggregate, affects commerce. See Richard Norby & Rocky Norby, Partners, 4 O.S.H.C. (BNA) 1722 (1974)
 There is yet another basis for holding that the "affecting commerce" test was met here. Even if we interpreted the Act to require the Secretary to show a more particular and tangible nexus with interstate commerce, he has carried that additional burden. Respondent Lacy testified that he used material and tools manufactured by Weyerhaeuser and Craftsman (Sears Roebuck). The use of material that has at any point moved in commerce is enough to establish that a business affects commerce, and it is appropriate to take judicial notice of the fact that Lacy's ultimate suppliers, Weyerhaeuser and Sears, are engaged in the production and distribution of goods for commerce. See Daniel v. Paul, 395 U.S. 298, 305, 89 S.Ct. 1697, 1701, 23 L.Ed.2d 318 (1969); West Allis Lime & Cement Co., 2 O.S.H.C. (BNA) 1453, 1456 (1974); Salerno Bros. Inc., 2 O.S.H.C. (BNA) 3249 (1974).