**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION,
Plaintiff–Appellant,**

v.

**Susan RATLIFF, f/k/a Susan Matasta-
sio, Defendant–Appellee,**

and

**Smart, Inc.; John Keriotis; Akropolis
Enterprises, Inc.; Darrin Armstrong;
Fortune 600, Inc., all d/b/a Grecian
Spa, Defendants.**

Nos. 89–15017, 89–15184.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1990.

Decided June 21, 1990.

Lorraine C. Davis, Asst. Gen. Counsel, E.E.O.C., Washington, D.C., for plaintiff-appellant.

Patricia J. Finley, Greengard & Finley, Phoenix, Ariz., for defendant-appellee.

Before FLETCHER, PREGERSON and NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

The underlying cause of action in this case is a claim of sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* brought by the Equal Employment Opportunity Commission (EEOC) on behalf of female employees at the Grecian Spa (the Spa), a fitness center in Tempe, Arizona. This appeal, however, presents two narrow issues only: (1) whether the district court erred in granting the Spa's motion for summary judgment for lack of subject matter jurisdiction on the ground that EEOC's evidence was insufficient to establish that the Spa was engaged in an industry affecting commerce; and (2) whether the district court abused its discretion in awarding attorney's fees to the Spa.

## BACKGROUND

On July 9, 1987, the EEOC filed this action against Smart, Inc. dba Grecian Spa, Susan Ratliff (the Spa's manager or manager and owner),[1] and others, alleging sexual harassment and retaliatory discharge in violation of Title VII. In its complaint, the EEOC made the requisite allegations to support the jurisdictional requirement that the defendants are "employers" within the meaning of Title VII, i.e. that they had at least 15 employees and that they were engaged in an industry affecting commerce. In her Answer, Ratliff, in a similar conclusory fashion, denied that the Spa satisfied those jurisdictional requirements. The parties then engaged in discovery. On October 14, 1987, in its first set of interrogatories, the defendants sought information relating to the allegation that they were engaged in an industry affecting commerce and that they employed at least 15 people. The Commission's response recited the statutory definition of "employer," asserted that the Spa met the definition, and referred the defendants to the EEOC investigative file. On February 29, 1988 the defendants brought a motion to compel the EEOC to provide more complete answers to the interrogatories. The district court denied the motion on April 4.

In September and October 1988, both sides introduced affidavits substantiating their positions regarding the jurisdictional requirements. Ratliff then moved for summary judgment on the grounds that she was not an "employer" because she had no ownership interest in the Spa, that the Spa did not have the requisite number of employees, and that the Spa did not affect commerce. Ruling from the bench, the district court granted the motion on October 28, 1988, finding that although there were disputed issues of material fact concerning Ratliff's status and the number of employees, the Commission had failed to establish that the Spa was a business affecting commerce, and the court therefore lacked jurisdiction. The court dismissed the action with prejudice, denying EEOC's request to submit additional affidavits on the jurisdictional points.

Ratliff then sought $20,234 in attorneys fees under Title VII and Fed.R.Civ.P. 11. The district court awarded $18,489 under Title VII for all work performed after October 14, 1987, the date of the defendants' first set of interrogatories. The Commission appeals from these orders.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 of this timely appeal from final orders. We review a grant of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986); *Lowe v. City of Monrovia,* 775 F.2d 998, 1003 (9th Cir.1985).

## DISCUSSION

### I. *Summary Judgment*

Congress passed the Civil Rights Act of 1964 pursuant to its authority under the Commerce Clause; the reach of Title VII's prohibitions against employment discrimi-

1. Ratliff admits that she was the Spa's manager. She denies that she had any ownership interest. The district court did not address this issue. Title VII defines an "employer" as including "any agent" of an employer.

nation is to all persons engaged in an "industry affecting commerce."[2] The Supreme Court has interpreted the term "industry affecting commerce" as indicating Congress' intent to exercise its regulatory power to "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." *NLRB v. Reliance Fuel Oil Corp,* 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963). *See, Polish Nat'l Alliance v. NLRB,* 322 U.S. 643, 647, 64 S.Ct. 1196, 1198, 88 L.Ed. 1509 (1944) (When Congress "wants to bring aspects of commerce within the full sweep of its constitutional authority, it manifests its purpose by regulating not only 'commerce' but also matters which 'affect,' 'interrupt' or 'promote' interstate commerce.... In so describing the range of its control, Congress is not indulging stylistic preferences; it is mediating between federal and state authorities, and deciding what matters are to be taken over by the central Government and what to be left to the States.")

Soon after the Civil Rights Act was passed, the Supreme Court found the Act to be a valid exercise of Congressional power under the Commerce Clause, and in the process continued the expansive interpretation of what constitutes "industry affecting commerce."[3] In *Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) and *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), the Court found that a local restaurant, Ollie's Barbeque, and a local motel were reached by the statute, not only because they served persons traveling across state lines, but also because in the case of Ollie's Barbeque, meat was purchased from a local supplier who had obtained it from out-of-state sources.

█ The "affects commerce" jurisdictional obstacle is very low indeed. This is particularly so in the context of Title VII cases, where courts have said that the jurisdictional requirements are to be liberally construed to effect the remedial purpose of the statute. *Williams v. City of Montgomery,* 742 F.2d 586, 588 (11th Cir.1984). If the defendant uses items that have moved through interstate commerce at some point in their lives, *United States v. Dye Construction Co.,* 510 F.2d 78 (10th Cir.1975) (defendants purchased trucks and insurance policies produced by out-of-state sources), or serves persons from out of state, *Lucido v. Cravath, Swaine & Moore,* 425 F.Supp. 123 (S.D.N.Y.1977) (law firm found to be "employer" under Title VII because it does business with nationwide and international clients), or engages in activity that, even if purely local, would alter the relationships of an interstate market, *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (farmer's production of wheat for home consumption), the "affects commerce" requirement is satisfied.

The Commission makes two arguments as to why the district court erred in finding that the suit should be dismissed for lack

2. Title VII prohibits employers from discrimination against individuals on the basis of race, color, religion, sex, or national origin. Section 701(b) defines "employer" as—

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....

42 U.S.C. § 2000e(b).

Section 701(h) tracks the wording of the Labor Management Reporting and Disclosure Act of 1959 and the National Labor Relations Act by defining the term "industry affecting commerce" to mean—

> any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor–Management Reporting and Disclosure Act of 1959....

42 U.S.C. § 2000e(h).

"Commerce" in turn is defined as—

> trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; ... or between points in the same State but through a point outside thereof.

42 U.S.C. § 2000e(g).

3. According to one treatise, "[b]y the time Title VII was passed, most of the litigation over the meaning and reach of 'industry affecting commerce' had already occurred under the provisions of the NLRA." A. Larson & L.K. Larson, *Employment Discrimination,* § 5.31, at 2–36.

of subject matter jurisdiction because of the EEOC's failure to establish that the Spa was involved in an industry affecting commerce. First, the Commission argues that the evidence that the Spa used Nautilus equipment supports an inference that the Spa affects commerce, because the purchase of goods from a business engaged in interstate commerce is sufficient to meet the "affecting commerce" test. Ratliff responds that even though the "affecting commerce" jurisdiction requirement is liberally construed, there must be at least *some* proof, however minimal, that an item or service moved in interstate commerce, and the EEOC failed to supply such proof.[4]

It is true that the EEOC bore the burden of proving the existence of jurisdiction once it has been challenged. However, at the summary judgment stage, it was Ratliff's burden, as the moving party, to show that there was no genuine issue of material fact. In making this determination, the law and the facts are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On September 13, 1988 the Commission submitted affidavits by the Spa employees to substantiate the jurisdictional allegations. In regard to the affecting-commerce requirement, the affiant testified as follows:

> The Grecian Spa was engaged in business commerce including selling spa memberships, providing health and fitness facilities such as nautilus equipment, providing instruction to persons without regard to their state residency, receiving checks, accepting credit cards such as Mastercard and Visa, and using the United States Mails.

The defendants in turn submitted two affidavits in which affiants swore that

> . . . there is nothing in the least bit interstate about the operations of the Grecian Spa in Tempe. As with any other spa which is not a part of a chain, this spa draws its customers only from about a five-mile radius, the distance which can be conveniently driven by one seeking these services. No solicitation of business occurs beyond this area, nor are any supplies, goods and services purchased in interstate commerce which might be used in the business. All customers who use services reside in Arizona at the time, and all materials purchased are purchased locally.

These affidavits demonstrate that there was a genuine issue of fact as to whether the Spa was engaged in an industry affecting commerce, especially given how little it takes to establish that fact. Ratliff makes much of the fact that the EEOC admits that it does not routinely investigate the basis for asserting that a defendant is engaged in interstate commerce, and the court also appears to have considered the Commission's failure to engage in any pre-filing investigation. This criticism is misplaced in light of how rare it is for the "affects commerce" requirement to pose a bar to suit. As one treatise notes, "it is difficult to imagine any activity, business or industry employing 15 or more employees that would not in some degree affect commerce among the states." A. Larson & L.K. Larson, *Employment Discrimination* § 5.31, at 2–40 (1987). As for the Commission's failure to marshall more evidence to rebut the Spa's jurisdictional challenge, the EEOC may have been misled by the district court's denial of Ratliff's motion to compel more complete answers to its interrogatories. The EEOC may have interpreted this as a sign that its responses were adequate to establish jurisdiction—a not unreasonable interpretation given how relaxed is the requirement.

The second argument advanced by the EEOC is that as a matter of law if a local business is within a class of activities which in the aggregate has an effect on

4. On appeal, the Commission also emphasizes the number of employees and the size of the payroll, which Ratliff correctly notes are not sufficient to establish that the business affects commerce. They are, however, relevant indicators of an entity's impact on interstate commerce. *See, Usery v. Lacy,* 628 F.2d 1226 (9th Cir.1980); *NLRB v. Imperial House Condominium, Inc.,* 831 F.2d 999 (11th Cir.1987). Additionally, the Commission submitted affidavits alleging that the Spa served people regardless of their state of residency.

commerce, there is no need for a particularized factual showing that the Spa meets the "affecting-commerce" test. The Commission relies primarily on *Usery v. Lacy*, 628 F.2d 1226 (9th Cir.1980). The *Usery* court, in analyzing the reach of the Occupational Safety and Health Act, explained that "if a statute covers business 'in commerce,' a fairly specific showing must be made of a connection between the particular employer regulated and interstate commerce.... On the other hand, a statute may require only that the particular business 'affect' commerce ... In such cases there is statutory jurisdiction so long as the business is in a class of activity that as a whole affects commerce." *Id.* at 1228.[5]

Ratliff offers little in rebuttal. Ratliff argues that the Commission's reasoning "taken to its logical conclusion would entirely eliminate the 'affecting interstate commerce' jurisdictional prerequisite." While we do not foresee that the Commission's reasoning would "entirely eliminate" the jurisdictional barrier, we do agree that it would give it little force. That, however, would seem to characterize fairly the state of the law. Ratliff also challenges the Commission's evidentiary basis for characterizing fitness clubs as "big business." It is not clear that the EEOC would need to show that fitness clubs are "big business," but merely that the Spa is in a class of activity that as a whole affects commerce.

Of course, even under *Usery*, the EEOC must show or the court must take judicial notice of the fact that the fitness industry as a whole affects commerce.[6] This showing is even more easily made than the "big business" showing.

Ratliff urges the panel to affirm the district court on the alternative ground that the Spa did not have fifteen employees on each working day during twenty weeks in the relevant years, as is required by § 701 of Title VII. However, the district court explicitly found there was a factual dispute as to this issue and held that it would not grant defendants summary judgment on this ground. We cannot consider what in effect was a denial of a grant of summary judgment.

## II. Attorney's Fees

This court's reversal of the district court's grant of summary judgment eliminates the predicate for the attorney's fees award.

## CONCLUSION

The district court's grant of defendant's motion for summary judgment is reversed and its award of attorney's fees is vacated.

---

5. At least one source seems to interpret *Usery* as the EEOC does. In a section on "practice pointers," A.L.R. Federal warns that "counsel for an employer has little hope of successfully contesting OSHA's assertion of jurisdiction over his client on the basis that he falls outside the scope of the statute, since the Act requires only that a particular business 'affect' commerce, so there is statutory jurisdiction as long as the business is in a class of activity that as a whole 'affects' commerce." (citing to *Usery*.) Annotation, "OSHA—Examination of Employees," 56 A.L.R. Fed. 262, 267.

6. The EEOC asks the panel to take judicial notice to establish facts sufficient to meet the "affecting commerce" test, such as the out-of-state location of the Nautilus manufacturer. Contrary to Ratliff's position, this information is not necessarily outside the scope of Fed.R.Evid. 201(f), as it probably is capable of accurate and ready determination. For instance, in *Daniel v. Paul*, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318

(1969) the Supreme Court, finding that a local amusement park met the "affects commerce" test, noted that

> [t]he record, although not as complete on this point as might be desired, also demonstrates that a 'substantial portion of the food' served by the Lake Nixon Club snack bar has moved in interstate commerce. The snack bar serves a limited fare—hot dogs and hamburgers on buns, soft drinks, and milk. The District Court took judicial notice of the fact that the 'principal ingredients going into the bread were produced and processed in other States' and that 'certain ingredients [of the soft drinks] were probably obtained ... from out-of-State sources.'

*Id.* at 305, 89 S.Ct. at 1701, quoting *Kyles v. Paul*, 263 F.Supp. 412, 418 (E.D.Ark.1967). In *Usery v. Lacy*, 628 F.2d at 1229, n. 3, this court took judicial notice of the fact that the ultimate suppliers of the defendant's tools, Sears Roebuck and Weyerhaeuser, are engaged in the production and distribution of goods for commerce.