Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Paul CORDERO, an individual, Defendant.

Civ. No. 80–0523.

United States District Court, D. Puerto Rico.

Feb. 24, 1981.

U. S. Dept. of Labor, Hato Rey, P.R., for plaintiff.

Leonardo Llequis, Hato Rey, P.R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

In 1974 Congress amended the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., to include within its coverage private domestic workers. See 29 U.S.C. §§ 202(a), 206(f), 207(*l*), 213(a)(15) and 213(b)(21). As basis for its power to so legislate, Section 2(a) of said statute was amended to provide *in fine*: "That Congress ... finds that the employment of persons in domestic service in households affects commerce" (29 U.S.C. § 202(a)).

Plaintiff claims that Defendant has failed to pay minimum wages and overtime pay to one of his domestic employees in violation of the mentioned Act. Defendant challenges the validity of this legislation *vis a vis* Congress' finding of "commerce."

The issue presented by this case is the extent to which Congress can regulate intrastate activity under the guise or fiction that said activity affects interstate commerce. Phrased differently, can Congress by concluding that private domestic employment affects commerce place such a finding beyond judicial inquiry, foreclosing any consideration by the Court as to the validity of such a finding? Otherwise stated, is the regulation of such activities beyond the pale of the Commerce Clause?

We commence by defining the subject matter of our inquiry. As stated in the legislative history of the 1974 amendments:

"The term 'domestic service' employees is not defined in the Act. However, the generally accepted meaning of domestic service relates to services of a household nature performed by an employee in or about a private home of the person by whom he or she is employed. The domestic service must be performed in a private home which is a fixed place of abode of the individual or family. A separate and distinct dwelling maintained by the individual or family in an apartment house or hotel may constitute a private home. However, a dwelling house used primarily as a boarding or lodging house for the purpose of supplying such services to the public, as a business enterprise, is not a private home.

Generally, domestic service in and about a private home includes services performed by persons employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use." H.R.Rep.No.93–913, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 2811, 2845.

1. Taken to its "logical" conclusion, these family members also perform work that "affects commerce" and could presumably also be within the scope of such a finding by Congress and within the reach of future Fair Labor Standards Act amendments, an undoubtedly appealing thought to scores of "oppressed" and "underpaid" wives and children. One's imagination knows no limits to the interminable nicities and nuances that such a speculative situation would create: Who would be the employer?

■ It is thus apparent that by "domestic service employee" is meant those employees who perform home-related noncommercial labor in private family homes, and whose work, but for the availability of outside paid help and the economic means of the home owner to compensate the same, would be done by tradition and necessity in every household in the United States by members of that family unit. In other words, these are persons paid to do chores that are normally carried out in most homes by the family members themselves, without formal pay.[1]

The absurdity of this situation could easily lead us astray of our standard of review.

■ Although we are not required to accept Congress' finding merely because it is such a finding, unfortunately we are limited to determining whether or not Congress had *any* rational basis for its finding that the activities of household domestic employees affect commerce. *Maryland v. Wirtz*, 392 U.S. 183, 190, 88 S.Ct. 2017, 2020, 20 L.Ed.2d 1020 (1968), overruled in part on other grounds in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); *Katzenbach v. McClung*, 379 U.S. 294, 303–304, 85 S.Ct. 377, 383, 13 L.Ed.2d 290 (1964). If such a basis exists, restraint on Congress must come from political rather than from judicial processes. *Wickard v. Filburn*, 317 U.S. 111, 120, 63 S.Ct. 82, 86, 87 L.Ed. 122 (1942); *Board of Trade of City of Chicago v. Olsen*, 262 U.S. 1, 37, 43 S.Ct. 470, 477, 67 L.Ed. 839 (1923).

Plaintiff's burden under this standard is so minimal as to practically be self-executing.

Would the husband or the wife fall within the "executive" or "administrative" exemptions of the Act? Would there be a punch clock in the kitchen and another one in the work shop? Would there be a deduction from the children's wages for meals and lodging? What if grandma comes for a visit and helps out, would she get on the payroll?

We can be thankful that Congress in its infinite wisdom has thus far exercised legislative restraint in this respect.

Plaintiff alleges that the basis exists in that "covering domestics under the Fair Labor Standards Act would affect commerce by (1) increasing domestics' purchasing power in the national economy; (b) affecting demand for goods and materials that move in commerce; (c) regulating the conditions under which others are freed to engage in commerce; and (d) reducing the likelihood of labor disputes interrupting commerce." (Plaintiff's brief at 7).

■ Although when individually considered, the impact of domestics could very well be *de minimis* on all of these points, we cannot so conclude if we view this problem in the light of the over 1,285,000 workers found by Congress to be engaged in domestic employment. See H.R.Rep.No.93–913, 93rd Cong., 2d Sess. [1974] U.S.Code Cong. and Admin.News, pp. 2811, 2842. This is so at least as respects the first three of Plaintiff's allegations. The contention that coverage of domestics will bring about a reduction of labor disputes interrupting commerce is so preposterous as to require no further comment, particularly when we consider its total lack of a factual support in either the Congressional record or in experience.

Notwithstanding that the Congressional debates reflect deep concern among various members of Congress regarding the constitutional validity of the challenged coverage (see 119 Cong.Rec. S 24,796–24,798, 120 Cong.Rec. S 8,765–8,766), all of the Courts that have considered this issue have sustained this action, relying principally on the cumulative impact theory which we have previously alluded to. *Marshall v. Rose*, 616 F.2d 102, 105 (C.A.4, 1980); *Ruenkamol v. Stifel*, 463 F.Supp. 647 (D.N.J., 1978); *Blakeney v. Walton*, 23 W H Cases 879 (M.D.N.C., 1978); *Bonnette v. Califa. Health and Welfare Agency*, 414 F.Supp. 212 (N.D.Cal., 1976). See also "Private Household Workers and the Fair Labor Standards Act", 5 Conn.L.Rev. 623 (Spring, 1973); Cf. *Usery v. Lacy*, 628 F.2d 1226, 1228–1229 (C.A.9, 1980).

On this basis we cannot say that such a conclusion lacks *any* rational basis and are thus persuaded that, in law, Congress acted within its powers in extending coverage of the Fair Labor Standards Act to domestic employees.[2] We concede that this is stretching the Commerce Clause beyond the point where it can return to any semblance of its original shape. In mitigation it can only be said that this has been the history of this constitutional provision.[3] Cf. *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

Defendant's affirmative defenses which are inconsistent herewith are hereby stricken.[4]

This matter is referred to the United States Magistrate for a Status Conference and further action.

IT IS SO ORDERED.

---

**2.** We note in passing that Social Security coverage of private household workers who earn at least $50 in cash wages per quarters (42 U.S.C. §§ 301–1305) is constitutionally grounded on Article I, Section 8, Clause 1, of the Constitution (Congress' power to spend and tax in the aid of the "general welfare"), and not on the Commerce Clause (Article I, Section 8 Clause 3), *Helvering v. Davis*, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).

**3.** The words of the Supreme Court in *Katzenbach v. McClung*, 379 U.S. 294, 302, 85 S.Ct. 377, 382, 13 L.Ed.2d 290 (1964):

"The activities that are beyond the reach of Congress are 'those which are completely within a particular State, which do not affect other States, and with which it is not necessary to interfere, for the purpose of executing some of the general powers of government.' *Gibbons v. Ogden*, 9 Wheat 1, 195, 6 L.Ed. 23 (1824). This rule is as good today as it was when Chief Judge Marshall laid it down almost a century and a half ago."

have in practice and reality, proven to be just that.

**4.** Should Defendant wish to appeal this Decision and Order, such appeal shall be certified by this Court pursuant to 28 U.S.C. Sec. 1292(b).