[No. D025958. Fourth Dist., Div. One. Nov. 4, 1998.]

LEOPOLDO ROSAS, Plaintiff and Respondent, v.
VON LEE G. DISHONG et al., Defendants and Appellants.

---

**COUNSEL**

Higgs, Fletcher & Mack and John Morris for Defendants and Appellants.

Hitt & Pinkerton and Thomas M. Pinkerton, Jr., for Plaintiff and Respondent.

---

**OPINION**

**WORK, J.**—Homeowners Von Lee G. and Janet M. Dishong (the Dishongs) appeal a judgment in favor of Leopoldo Rosas for injuries sustained while attempting to trim a tree at the Dishongs' residence. They contend the court erred in concluding Rosas was acting as their employee rather than as an independent contractor, when engaged in a task for which California requires a contractor's license. On the facts presented, we conclude the trial court correctly ruled that the unlicensed Rosas is deemed an employee pursuant to Labor Code[1] section 2750.5.

However, we conclude the trial court erred in finding the Dishongs, by hiring Rosas to trim the tree in the yard of their home, became subject to the extensive safety provisions of California's Occupational Safety and Health Act (OSHA or the Act) set forth in section 6300 et seq. Because we conclude the OSHA requirements do not apply in this noncommercial single tree-trimming transaction, we reverse the judgment which was based on a finding the Dishongs were strictly liable once they conceded they had not complied with certain OSHA safety requirements.

### FACTUAL AND PROCEDURAL BACKGROUND

Rosas provided landscape maintenance services to the Dishongs for 10 years. The Dishongs asked Rosas to trim a tree branch overhanging their roof, agreeing to a price in addition to his regular maintenance fee. Rosas later returned to trim the branch. While attempting to cut the branch, he fell to the ground injuring his back.

---

[1]All further statutory references are to the Labor Code unless otherwise specified.

Rosas filed a workers' compensation claim under the Dishongs' home-owners policy, which was denied by the carrier because Rosas had not met the minimum hours required by section 3352, subdivision (h) to be eligible for such benefits. Rosas thereafter sued the Dishongs to recover damages suffered as a result of the fall, alleging general negligence and premises liability causes of action.

Rosas moved *in limine* to prohibit the Dishongs from arguing or introducing evidence that the relationship between the Dishongs and Rosas was anything other than that of an employer and employee and from asserting the defenses of assumption of risk, contributory or comparative negligence. The parties stipulated that trimming trees exceeding 15 feet in height requires a license under Business and Professions Code section 7026.1, a license Rosas did not possess. The parties further stipulated that Rosas was not an "employee" entitled to workers' compensation coverage. (See § 3352, subd. (h) [household employees not meeting minimum requirements for time worked or wages earned].) Based on section 2750.5 and related case law (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5 [219 Cal.Rptr. 13, 706 P.2d 1146]; *Foss* v. *Anthony Industries* (1983) 139 Cal.App.3d 794 [189 Cal.Rptr. 31]), the court ruled as a matter of law that the unlicensed Rosas was an employee, not an independent contractor, for the purposes of this tort litigation.

The parties further stipulated that assuming OSHA applied, the Dishongs had not complied with certain OSHA statutes (§§ 6400, 6402, 6403) and this noncompliance contributed to Rosas's injuries. Based on those stipulations and section 2801,[2] the court struck the Dishongs' contributory negligence and assumption of risk defenses. There being no defenses to the cause of action for the employer failing to maintain a safe work place, the court entered judgment for $100,000 based on stipulated damages.

## DISCUSSION

The two issues presented are whether section 2750.5 makes Rosas the Dishongs' employee as a matter of law and, if so, whether OSHA applies to

---

[2]Section 2801 provides:

"It shall be conclusively presumed that such employee was not guilty of contributory negligence in any case where the violation of any law enacted for the safety of employees contributed to such employee's injury.

"It shall not be a defense that:

"(a) The employee either expressly or impliedly assumed the risk of the hazard complained of.

"(b) The injury or death was caused in whole or in part by the want of ordinary or reasonable care of a fellow servant.

"No contract, or regulation, shall exempt the employer from any provisions of this section."

homeowner employers under the circumstances of this case. Both issues present pure questions of law (statutory interpretation based on stipulated facts) entitled to de novo review. (*Dawson* v. *East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1025 [34 Cal.Rptr.2d 108].) As discussed below, we conclude Rosas is the Dishongs' employee, but that OSHA does not apply.

## SECTION 2750.5 AND RELATED CASE LAW

Section 2750.5[3] contains a presumption that a worker performing services for which a license is required is an employee rather than an independent contractor. The presumption may be rebutted by proof of certain specified factors which traditionally demonstrate independent contractor status. Additionally, the statute in its penultimate paragraph provides that ". . . any person performing any function or activity for which a license is required . . . shall hold a valid contractors' license as a condition of having independent contractor status." (*Ibid.*)

---

[3]Section 2750.5 provides:

"There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor. Proof of independent contractor status includes satisfactory proof of these factors:

"(a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for.

"(b) That the individual is customarily engaged in an independently established business.

"(c) That the individual's independent contractor status is bona fide and not a subterfuge to avoid employee status. A bona fide independent contractor status is further evidenced by the presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work other than tools and instrumentalities normally and customarily provided by employees, hiring employees, performing work that is not ordinarily in the course of the principal's work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract.

"In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a valid contractors' license as a condition of having independent contractor status.

"For purposes of workers' compensation law, this presumption is a supplement to the existing statutory definitions of employee and independent contractor, and is not intended to lessen the coverage of employees under Division 4 and Division 5."

In *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at pages 11-12, 15, our Supreme Court interpreted the penultimate paragraph as requiring an unlicensed contractor injured while constructing an addition to the defendant's home to be deemed an employee entitled to receive workers' compensation benefits. The court placed the burden of determining the worker's license status squarely on the homeowner and in the absence of a misrepresentation by the contractor as to license status, the unlicensed contractor cannot be estopped from denying independent contractor status and claiming benefits as an employee. (*Id.* at pp. 13, 16.)

The court noted the fundamental policy underlying the workers' compensation laws is "that those hiring others to perform services should bear the risk of injuries incurred in the undertakings." (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at p. 13.) Thus, it found it reasonable for a person hiring a licensed independent contractor to anticipate the contractor will insure against the risk and pass the cost of insurance along in the contract price. However, in the case of an unlicensed contractor performing work for which a license is required, the likelihood that the contractor will obtain insurance is greatly reduced. (*Ibid.*) The court therefore concluded: "It is not unreasonable for the Legislature to conclude that effective implementation of a system of providing for workers' injuries requires liability on the part of the ultimate hirer and that he should not be able to avoid liability on the ground that he dealt with a contractor when the contractor lacked a required license. . . . While it may seem anomalous to hold that the hirer is liable for compensation only if the contractor lacks the required license, and that he would not be liable if the contractor were licensed, the justification is apparent in that the Legislature has sought to assure that both licensed and unlicensed contractors and their employees will have compensation should they be injured on the job." (*Ibid.*)

*Foss* v. *Anthony Industries, supra,* 139 Cal.App.3d 794, arose out of a truck and motorcycle accident in which the motorcyclist was killed. The truck was driven by the employee of Jo'Dee Enterprises (Jo'Dee), an unlicensed contractor hired by Anthony Industries (Anthony) to perform work for which a license was required. The trial court concluded section 2750.5 applied in workers' compensation cases only and granted Anthony's motion for nonsuit because the plaintiff had not shown Jo'Dee was an employee rather than an independent contractor. (*Foss* v. *Anthony Industries, supra,* at p. 797.) Applying rules of statutory construction and examining the public policy behind the section, this court reversed and held section 2750.5 applies in civil tort cases. (*Foss* v. *Anthony Industries, supra,* at pp. 797-799.) The court found application of the section in such cases furthered public policy by: 1) imposing liability on the party who is benefited by the labor

and is capable of spreading the risk through obtaining insurance; and 2) encouraging those who employ others to hire workers who have demonstrated the competence and financial responsibility necessary to obtain a contractor's license. (*Id.* at p. 799.)

### SECTION 2750.5 AS APPLIED TO ROSAS

In concluding Rosas was an employee rather than an independent contractor, the trial court accepted a multistep statutory analysis advocated by Rosas, whereby the interaction of section 3352, subdivision (h), and section 2750.5 resulted in Rosas being denied workers' compensation recovery but being entitled to potential civil tort recovery.[4] Under the analysis, Rosas is excluded as an "employee" for workers' compensation purposes because he had not worked the minimum hours necessary for coverage of household employees. (§§ 3352, subd. (h), 3351, subd. (d).) However, as an unlicensed contractor performing work for which a license is required, he is deemed to be an employee for civil tort purposes and potentially entitled to recovery. (§ 2750.5.) ▮ We must therefore determine whether in enacting section 2750.5, the Legislature intended that an unlicensed contractor should be deemed an employee under the circumstances of this case.[5]

▮ The primary goal of statutory construction is to determine the Legislature's intent to effectuate the purpose of the law. (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) To do so, a court looks first to the words of the statute. (*Ibid.*) If the words are clear, the statute is enforced according to its terms. (*Id.* at pp. 387-388.) A court considers the provision in the context of the entire statute and the purpose of the statutory scheme of which it is part. (*Id.* at p. 388.)

---

[4] The full analysis accepted by the court follows: 1) under section 3352, subdivision (h), Rosas is excluded from coverage under the workers' compensation scheme; 2) under sections 3600, subdivision (a)(1) and 3602, subdivision (c), the Dishongs have personal liability as Rosas's employers, as if division 4 of the Labor Code (workers' compensation provisions) had not been enacted; 3) applying division 3 of the Labor Code (§§ 2700-2807) to the stipulated facts, Rosas may sue his employer for personal injuries; 4) under section 2750.5, Rosas is the Dishongs' employee as a matter of law because his lack of a license while performing work for which a license is required prevents the presumption of employee status from being rebutted.

[5] The Dishongs refer us to *Furtado* v. *Schriefer* (1991) 228 Cal.App.3d 1608 [280 Cal.Rptr. 16], concerning the interaction of sections 2750.5 and 3352, subdivision (h). They contend the case implies that while Rosas cannot be deemed to be an independent contractor for purposes of workers' compensation law, he should not as a matter of law be deemed to be an employee for purposes of tort law. Rosas on the other hand contends *Furtado* holds that if a plaintiff is excluded as an employee for workers' compensation coverage, he may pursue his civil suit as an employee. The question whether Furtado was an employee or an independent contractor for purposes of the civil suit was not at issue in *Furtado*. It provides us with no guidance for the questions raised here.

■ Here, the meaning of section 2750.5 is clear. By making a license a condition of independent contractor status, the Legislature was unequivocal that a person lacking the requisite license could not be an independent contractor. (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at p. 15.)

Additionally, the position of section 2750.5 within the statutory scheme indicates the Legislature intended to provide a potential tort remedy to unlicensed workers injured while performing a job for which a license is required. The section is placed in division 3 (§ 2700 et seq.) of the statutes, dealing with the general obligations and liability of an employer to an employee rather than divisions 4 and 4.5 (§ 3200 et seq.) dealing with workers' compensation. Section 2700 provides that the provisions of division 3 shall fully apply to all cases where the provisions of divisions 4 and 4.5 are not applicable. Section 3602, subdivision (c) provides that where the conditions of workers' compensation liability set forth in section 3600 do not concur, the liability of the employer is the same as if division 4 had not been enacted. Section 3600, subdivision (a)(1) conditions workers' compensation coverage on both the employer and the employee being subject to the workers' compensation provisions at the time of the injury. Where a worker is excluded from workers' compensation coverage under section 3352, subdivision (h), the statutory scheme provides for potential liability under division 3, including section 2750.5.

Moreover, finding Rosas to be an employee under section 2750.5 furthers the policies identified in *Foss* v. *Anthony Industries, supra,* 139 Cal.App.3d 794, i.e., 1) imposing liability on the one benefited by the labor and capable of spreading the risk through insurance; and 2) encouraging the hiring of workers with the competence and financial responsibility necessary to obtain a license. It is evident that potential tort liability for hiring an unlicensed worker to do a job requiring a license encourages a homeowner to hire a licensed worker. As to spreading the risk through insurance, all California comprehensive personal liability insurance policies must provide coverage for workers' compensation claims as well as general liability insurance. (Ins. Code, § 11590.) Whether an injured worker recovers through workers' compensation coverage or through general liability coverage, liability is still imposed on the homeowner benefiting from the work and able to spread the risk through the purchase of a comprehensive homeowners' liability policy.

The Dishongs contend imposing tort liability under section 2750.5 would impose an unfair burden on unsuspecting homeowners. Based on the availability of workers' compensation insurance, our Supreme Court has rejected

an argument that application of section 2750.5 in workers' compensation proceedings would subject unsuspecting homeowners to an undue burden. (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at pp. 13-15.) Because comprehensive homeowners policies include both workers' compensation and liability coverage, the interaction of sections 3352, subdivision (h) and 2750.5 to allow an unlicensed worker who is excluded from workers' compensation coverage to sue in tort is unlikely to subject a homeowner to any greater burden than that envisioned by the Supreme Court in *State Compensation Ins. Fund.*

■ Although the Dishongs also contend applying section 2750.5 to subject a homeowner to potential tort liability for hiring an unlicensed worker is bizarre and unforeseen, we "presume that the Legislature intended all the consequences which flow from the plain meaning of the statute." (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 333 [265 Cal.Rptr. 788].) Section 2750.5 does not purport to punish or penalize unlicensed contractors, but rather purports to determine the status of persons as independent contractors or employees. (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at p. 15.) The section does not reflect legislative intent that an unlicensed contractor is an independent contractor for some purposes, but not for others. (*Ibid.*) If the statute results in a "windfall" to unlicensed contractors or an "undue burden" to unsuspecting homeowners as the Dishongs claim, "[i]t is for the Legislature, not the courts, to pass upon the social wisdom of . . . an enactment. And, if there is a flaw in the statutory scheme, it is up to the Legislature, not the courts, to correct it." (*Neighbours* v. *Buzz Oates Enterprises, supra,* at p. 334.)

### OSHA APPLICATION TO HOMEOWNERS

OSHA was enacted in 1973 to assure safe and healthful working conditions for California working men and woman. (§ 6300.) Rosas contends the Dishongs are subject to OSHA regulation and their failure to comply with sections 6400, 6401, 6402, and 6403 contributed to his injury. The Act, however, was not intended to apply to all employment or places of employment. Under OSHA, a "[p]lace of employment" is any place and its appurtenant premises where employment takes place. (§ 6303, subd. (a).) "Employment" is the "carrying on of any trade, enterprise, project, industry, business, occupation or work . . . in which any person is engaged or permitted to work for hire *except household domestic service.*" (§ 6303, subd. (b), italics added.) OSHA does not define "household domestic service."

■ The question presented is whether OSHA was intended to apply to individuals hired to trim a tree in a homeowner's yard.[6] Since 1917, California has consistently regulated safety in employment and places of employment where industry, trade, work or business are conducted.[7] The state, however, has consistently excluded "household domestic service" from such regulation.[8] We have located no legislative history on the intended scope of the household domestic service exclusion. Nor have we located any case law interpreting the exclusion. For purposes of regulating wages, hours and working conditions, however, "household occupations" means all services relating to maintenance of a private household or its premises including gardening. (Cal. Code Regs., tit. 8, § 11150, subd. 1(2)(C).)

California is not alone in excluding household domestic service from OSHA coverage. Federal OSHA defines an employer as "a person engaged in a business affecting commerce who has employees." (29 U.S.C. § 652.) As a policy matter, federal OSHA excludes "domestic household employment activities in private residences" from coverage. (29 C.F.R. § 1975.6 (1998).) We have located no cases interpreting the extent of the federal exclusion. However, in *Marshall v. Cordero* (D.P.R. 1981) 508 F.Supp. 324, 325, the court considered the term " 'domestic service employee' " within the context of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), and

---

[6]The record presented demonstrates the Dishongs hired Rosas solely in their capacity as homeowners. There is no evidence they were engaged in a business enterprise which was in any way connected with the tree trimming.

[7]Statutes 1917, chapter 586, section 33, page 861 (defining " 'place of employment' " to mean and include the place where "any industry, trade, work or business" is carried on and defining " 'employment' " to mean and include "any trade, work, business, occupation or process of manufacture"); Statutes 1919, chapter 471, section 33, pages 922-923 (continuing same inclusions); Statutes 1923, chapter 90, section 1, pages 165-166 (defining " 'place of employment' " to mean and include any place where "enterprise, project, industry, trade, work or business" is carried on and defining " 'employment' " to mean and include any "trade, work, enterprise, project, business, occupation or process of manufacture"); Statutes 1929, chapter 249, section 1, page 494 (continuing same inclusions); Statutes 1937, chapter 90, section 6303, page 306 (enacting Labor Code and defining " 'employment' " to include "the carrying on of any trade, enterprise, project, industry, business, occupation or work"); Statutes 1973, chapter 993, sections 45, 46, page 1927 (OSHA repealing section 6303 and adding section 6303 containing identical definition of "employment").

[8]Statutes 1917, chapter 586, section 33, page 861 (defining " 'place of employment' " to exclude "any place where persons are employed solely in household domestic service" and " 'employment' " to exclude work "where persons are employed solely in household domestic service"); Statutes 1919, chapter 471, section 33, pages 922-923 (continuing identical exclusions); Statutes 1923, chapter 90, section 1, pages 165-166 (continuing identical exclusions]; Statutes 1929, chapter 249, section 1, page 494 (continuing identical exclusions); Statutes 1937, chapter 90, section 6303, page 306 (enacting Labor Code and defining " 'employment' " to exclude "household domestic service"); Statutes 1973, chapter 993, sections 45, 46, page 1927 (OSHA repealing section 6303 and adding section 6303 containing identical definition of " 'employment' ").

found the generally accepted meaning to be employees who perform home-related, noncommercial labor in private homes and whose work would normally be done by members of the family unit, but for the availability of outside paid help and the homeowner's ability to pay. "In other words, these are persons paid to do chores that are normally carried out in most homes by the family members themselves, without formal pay." (*Marshall* v. *Cordero, supra,* at p. 325.)

Of the states which conduct occupational safety and health programs under 29 United States Code section 667(b), many have explicitly excluded household domestic services from coverage.[9] Still others have implicitly limited coverage.[10]

Courts in other jurisdictions have concluded OSHA does not apply to homeowners. The Washington Court of Appeals concluded the Legislature had intended the term " 'employer' " defined in Revised Code of Washington, section 49.17.020(3) to be synonymous with " 'business entity,' " where the general term " 'any person' " began a list of entities summarized at the end by the phrase " 'or other business entity.' " (*Rogers* v. *Irving* (1997) 85 Wn.App. 455, 462-463 [933 P.2d 1060, 1063-1064].) The court noted that a homeowner building his own home with the assistance of others did not engage in business and was typically ill-equipped to assume OSHA duties. (*Id.* at p. 1064.) In Minnesota, the court of appeal held the Legislature could not have intended OSHA to apply to the casual contracting presented and

---

[9]Statutes explicitly limiting coverage include: Arizona Revised Statutes Annotated, section 23-401 (defining "[e]mployee" to exclude those "engaged in household domestic labor" and defining "[e]mployer" to exclude those who employ "household domestic labor"); Hawaii Revised Statutes, title 21, section 396-3 (defining "[e]mployment" to exclude "domestic service in or about a private home"); New Mexico Statutes Annotated (Michie), section 50-9-3 (defining "employee" to exclude "domestic" employees); General Statutes of North Carolina, section 95-127 (defining "employer" to exclude one who employs "domestic workers" in the "place of residence"); Oregon Revised Statutes, title 51, section 654.005 (defining "[p]lace of employment" to exclude "any place where the only employment involves nonsubject workers employed in or about a private home"); Laws of Puerto Rico Annotated, title 29, section 361b (defining "[p]lace of employment" to exclude "premises of private residences or dwellings where persons are employed in domestic services" and defining "[e]mployment" to exclude "domestic service"); Tennessee Code Annotated, section 50-3-104 (defining scope of chapter to exclude "[d]omestic workers"); West's Wisconsin Statutes Annotated, section 101.01 (defining "[e]mployment" to exclude "private domestic service as does not involve the use of mechanical power").

[10]Statutes implicitly limiting coverage include: Annotated Code of Maryland, Labor and Employment, section 5-101 (defining "[e]mployee" as one who is employed "in the business of the employer"); Code of Virginia, sections 40.1 to 49.3 (defining "[e]mployer" as any person or entity "engaged in business who has employees" and defining "[e]mployee" as one who is employed in "a business of his employer"); Revised Code of Washington, section 49.17.020(3) (defining "employer" as "any person [specified entities] or other business entity").

concluded that to apply OSHA to a situation it equated with hiring a youngster to mow the grass would subject nearly every conceivable work arrangement to its provisions and chill the willingness to hire others to work. (*Stenvik v. Constant* (Minn.Ct.App. 1993) 502 N.W.2d 416, 420.)

California, as well as much of the nation, has historically emphasized business, industry and trade in defining OSHA coverage, while at the same time excluding coverage for household domestic services. It is unlikely average homeowners expect that OSHA requirements would apply when they hire someone to trim a tree for their own personal benefit and not for a commercial purpose. Tree trimming is a task often performed by members of a household. Moreover, homeowners are ill-equipped to understand or to comply with the specialized requirements of OSHA. We conclude the Legislature intended to exclude private residence yard maintenance work, including tree trimming, from OSHA coverage under the "household domestic service" exclusion.[11]

Rosas contends that an activity requiring a contractor's license could not possibly be considered "domestic" or "household" in nature. Without citation to authority, he implies that licensing statutes were enacted to ensure the safety of individuals either licensed or unlicensed who perform the "serious" work for which a licensed is required. The Contractors' State License Law was enacted to protect the public from dishonesty and incompetence in the business of contracting. (*Elliott v. Contractors' State License Bd.* (1990) 224 Cal.App.3d 1048, 1055 [274 Cal.Rptr. 286].) Work for which a license is required is not necessarily more dangerous than other tasks for which no license is required. The work performed by plumbers, painters and carpet installers, all work requiring a license (Bus. & Prof. Code, §§ 7026, 7026.3; *Howard v. State of California* (1948) 85 Cal.App.2d 361, 364 [193 P.2d 11]; *Kirman v. Borzage* (1944) 65 Cal.App.2d 156, 158 [150 P.2d 3]), cannot be said to be more dangerous and in need of safety protection than wood chopping, a task requiring no license.

Had the Legislature intended that OSHA apply as Rosas suggests, it could have so provided. Instead, it excluded "household domestic service" from

---

[11]Finding the safety regulations of the Labor Code do not apply to the Dishongs is consistent with California's treatment of owners who do not exercise control over work performed by independent contractors. In *Smith v. ACandS, Inc.* (1994) 31 Cal.App.4th 77 [37 Cal.Rptr.2d 457], Pacific Gas and Electric Company had power plants built using asbestos insulation. Under the then applicable Labor Code provisions, an owner could be deemed to be a statutory employer simply by virtue of its ultimate custody and control of its property. Case law, however, limited application of the safety regulations to owners exercising control over the operative details of the work. (*Id.* at pp. 89-92.)

coverage. As previously discussed, we conclude the exclusion applies where a homeowner hires someone to trim a tree. The fact that the exclusion applies, however, does not mean homeowners are shielded from liability for injuries their negligence might cause. It simply means that failure to comply with the provisions of OSHA will not result in presumptive negligence and the deprivation of affirmative defenses.

### DISPOSITION

The judgment is reversed. The Dishongs are entitled to costs on appeal.

Kremer, P. J., and Howatt, J.,* concurred.

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.