119 Cal.Rptr.2d 767 (2002)
98 Cal.App.4th 388
Miguel FERNANDEZ, Plaintiff and Appellant,
v.
Truman W. LAWSON, Jr., et al., Defendants and Respondents.
No. B153949.
Court of Appeal, Second District, Division Seven.
May 13, 2002.
As Modified on Denial of Rehearing May 28, 2002.
Review Granted August 14, 2002.
*768 Homampour & Associates and Arash Homampour, Beverly Hills, for Plaintiff and Appellant.
Wait & Childs and James W. Colfer, Covina, for Defendants and Respondents.
WOODS, J.
Miguel Fernandez asks this court to reverse the judgment entered upon the trial court's order granting summary judgment for Truman W. Lawson Jr., Gaile F. Lawson and the Truman W. Lawson Jr. and Gaile F. Lawson Trust (collectively Lawson) on Fernandez's complaint alleging, breach of California Occupational Safety *769 and Health Act (Lab.Code, § 6300 et seq.) (OSHA) regulations and American National Standards Institute (ANSI) safety standards relating to trimming of an approximately 50-foot tall palm tree at Lawson's private residence. The trial court concluded neither Fernandez nor his employer Anthony's Tree Service held the requisite state contractors' license to trim the palm tree and therefore as a matter of law, pursuant to Labor Code section[1] 2750.5, Fernandez would be considered Lawson's "employee" for the purposes of civil tort liability. Notwithstanding this conclusion, the court determined Lawson was entitled to summary judgment because OSHA regulations did not apply to homeowners who hire someone to trim a tree for their personal benefit at their private residence. We disagree with the lower court's conclusions. As set forth below, we find a triable question of fact exists as to the application of section 2750.5, and we cannot agree OSHA regulations would never apply to homeowners in this context. Accordingly, we reverse.

FACTUAL AND PROCEDURAL HISTORY
In March 2000, Anthony's Tree Service (ATS) approached Lawson and offered to trim the approximately 50-foot tall palm tree in Lawson's yard for $450.
ATS's owner Eliseo Lascano gave Lawson the business card for ATS; the card described the various areas of ATS expertise, including "topping," "trimming," "tree removal," "clean[ing] palm trees" and listed a license number. Unbeknownst to Lawson, the license listed on the card was an expired business license for the city of West Covina. Lascano knew a state contractors' license was required for certain tree trimming including the Lawson's palm tree, but neither he, ATS nor Fernandez held the requisite license. Lascano failed to inform Lawson no one from ATS held a requisite license for trimming Lawson's palm tree. Lascano did not inform or discuss with Lawson the license listed on the card was expired and irrelevant for the work on Lawson's property; and Lawson did not ask Lascano about the license listed on the card. During his deposition, Mr. Lawson testified he was uncertain as to whether he noticed the license number prior to hiring ATS and whether the license number listed on the card was relevant to his decision to hire ATS.
Mr. Lawson, however, did recall asking Lascano whether ATS held workers' compensation insurance. Lascano pulled an insurance form from his truck and showed it to Mr. Lawson. Lawson noticed the insurance had expired. Lascano told Mr. Lawson he would bring the current form. The next day, however, before work began Lascano told Mr. Lawson he had forgotten the form. Mr. Lawson debated as to whether to allow ATS to proceed with the tree trimming, but because ATS "had a license like the card said," Mr. Lawson also assumed ATS had current workers' compensation insurance. Nonetheless, ATS did not have current workers' compensation coverage at the time of the incident.
Fernandez had worked for ATS as a tree trimmer for two years and had a total of five years experience trimming trees, including palm trees similar to the one on Lawson's property. While attempting to climb Lawson's palm tree, Fernandez fell and suffered various injuries.
Fernandez filed the instant civil action against Lawson asserting causes of action for: (1) violation of Labor Code sections including sections 3706-3709, for Lawson's purported failure to maintain workers' compensation coverage; and (2) a violation of section 2750.5 for hiring an unlicensed contractor and violation of certain safety standards. Fernandez also asserted a general negligence claim. Pursuant to a stipulation between the parties, Fernandez dismissed the general negligence cause of action.
*770 Lawson filed a motion for summary judgment. With respect to the workers' compensation claim, Lawson pointed out their homeowner's insurance policy provided for workers' compensation insurance and Fernandez submitted a claim. The insurer denied the claim because Fernandez did not qualify as an "employee" entitled to benefits under section 3352, subdivision (h); Fernandez had not worked the requisite number of hours on the job. Concerning the section 2750.5 and OSHA claims, Lawson asserted Lascano misrepresented ATS held a contractors' license and valid workers' compensation for the job and thus, section 2750.5 should not apply. In addition, relying on Rosas v. Dishong (1998) 67 Cal.App.4th 815, 79 Cal. Rptr.2d 339, Lawson argued OSHA regulations do not apply to a homeowner who hires a tree trimming service for a single non-commercial, tree trimming job.
Fernandez opposed the motion. He abandoned his workers' compensation claim and instead asserted theories of liability under section 2750.5, OSHA violations, violation of "ANSI" tree trimming safety standards and respondeat superior. He argued Rosas was factually and legally distinguishable.
The court granted the motion and entered judgment for Lawson.
Fernandez appeals.

DISCUSSION

I. Standard of Review
In reviewing a grant of summary judgment motion, this court determines de novo whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); Union Bank v. Superior Court (1995) 31 Cal.App.4th 573, 579, 37 Cal.Rptr.2d 653.) We must determine whether the moving defendant has met its burden to disprove at least one essential element of the plaintiffs cause of action or shown an element of the cause of action cannot be established. (Sanchez v. Swinerton & Walberg Co. (1996) 47 Cal.App.4th 1461, 1465, 55 Cal.Rptr.2d 415.) If we conclude the moving defendant has met this obligation, then the burden shifts to the opposing plaintiff to demonstrate the existence of a triable issue of material fact as to the element or elements challenged by the defendant. (Hunter v. Pacific Mech, Corp. (1995) 37 Cal.App.4th 1282, 1286, 44 Cal.Rptr.2d 335.) The plaintiff may not rely upon the mere allegations of its pleadings, but instead must show by sufficient and competent evidence the requisite triable issue of material fact. (Brantley v. Pisaro (1996) 42 Cal.App.4th 1591, 1594, 50 Cal.Rptr.2d 431.)
In conducting our review, we are limited to the facts shown by the evidentiary materials (i.e., declarations and deposition testimony) submitted, as well as those facts admitted or uncontested in the pleadings, and moving and opposing papers. (Sacks v. FSR Brokerage, Inc. (1992) 7 Cal.App.4th 950, 962, 9 Cal.Rptr.2d 306.) The evidence presented by the moving party is strictly construed and that of the opposing party is liberally construed; the facts alleged in the evidence of the opposing party and the reasonable inferences therefrom must be accepted as true. (Savage v. Pacific Gas and Electric Co. (1993) 21 Cal.App.4th 434, 440, 26 Cal. Rptr.2d 305.) In addition, in considering a motion for summary judgment neither the trial court, nor this court may weigh the evidence to determine whose version is more likely true. Nor may a summary judgment be based upon the court's evaluation of credibility. (Binder v. Aetna Life Insurance Company (1999) 75 Cal.App.4th 832, 840, 89 Cal.Rptr.2d 540.)
We affirm an order granting summary judgment where the papers and pleadings show there is no triable issue of material fact in the action, (i.e., where the evidence demonstrates the claims of the opposing party are entirely without merit on any legal theory) thereby entitling the moving party to judgment as a matter of law. *771 (Code Civ. Proc, § 437c, subd. (c); see Mann v. Cracchiolo (1985) 38 Cal.3d 18, 35-36, 210 Cal.Rptr. 762, 694 P.2d 1134.) Doubts as to the propriety of summary judgment should be resolved against granting the motion. These principles govern our consideration of the issues on appeal.

II. The Court Erred in Granting Summary Judgment.
The trial court's ruling is premised on two conclusions. First, ATS did not have the required state contractors' license to trim Lawson's palm tree and thus, pursuant to section 2750.5, both Fernandez and ATS were deemed Lawson's employees, rather than independent contractors for civil tort liability purposes. Second, under Rosas, OSHA regulations did not apply to homeowners, like Lawson, who hire a tree service to trim a tree for Lawson's personal, non-commercial benefit.
As explained more fully below, we do not agree with the court's conclusions. In our view, a triable question of fact exists as to the application of section 2750.5. In addition, we cannot adopt the rationale of Rosas because it is inapplicable under the circumstances of this case, and thus triable issues of fact exist as to whether OHSA regulations were violated.

A. Application of Section 2750.5
Under Business and Professions Code section 7026.1, a state contractors' license is required to trim a tree greater than 15 feet in height. (Bus. & Prof.Code, § 7026.1, subd. (c).) The Lawson's palm tree was more than 50-feet tall, and thus a contractors' license was required to trim it.
Section 2750.5, provides in pertinent part:
"There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor."[2] (Lab.Code, § 2750.5.)
Under the plain language of section 2750.5, the hirer of a contractor for a job requiring a license is the statutory employer of not only the unlicensed contractor but also those workers employed by the unlicensed contractor. Statutory employer status imposes responsibilities upon the hirer, including obligations to comply with OSHA regulations {In re Kenko, Inc., 1993 CA OSHA App. Bd. LEXIS 17) as well liability for civil torts. (Rosas v. Dishong, supra, 67 Cal.App.4th at p. 818, 79 Cal. Rptr.2d 339; see Hunt Building Corporation v. Bernick (2000) 79 Cal.App.4th 213, 220-221, 93 Cal.Rptr.2d 883.)
This notwithstanding, a contractor (and by extension his or her workers) may be estopped from claiming "employee" status under section 2750.5, where the contractor has through its deed or word led the hirer to believe the contractor held a valid license for the work. (State Compensation Insurance Fund v. Workers Compensation Appeals Board (Meier) (1985) 40 Cal.3d 5, 16, 219 Cal.Rptr. 13, 706 P.2d 1146.)[3] "The essence of an estoppel *772 is that the party to be estopped has by false language or conduct `lead another to do that which he would not otherwise have done and as a result thereof that he has suffered injury.'" (Ibid.) To demonstrate estoppel in this context, the party urging it must show: (1) the contractor misrepresented it held a valid license for the work; and (2) the hirer relied on the representation. The existence of an estoppel is a question of fact. (Ibid.)
Below, Lawson asserted Lascano misled them about ATS license status. Before this court, Fernandez asserts there is no dispute as to the evidence concerning the license; he argues the uncontroverted evidence demonstrates Lascano did not misrepresent ATS held a valid license for the job.
We disagree. The evidence on estoppel on the record before this court raises triable factual questions for the jury. As to the issue of the misrepresentation, there is no evidence Lascano made any oral representations concerning ATS's license status. Nor did Lawson ask Lascano whether ATS had a valid contractors' license for the work. Nonetheless, Lascano listed a license number on the business card for ATS and the card described ATS's expertise in tree service. In our view, the representations on the business card raise factual questions as to whether ATS's license status was misrepresented.[4]
On the issue of reliance, the evidence conflicts. At one point during Mr. Lawson's deposition testimony, he suggested he considered ATS had a license (listed on its business card) in deciding to allow ATS to proceed with the work (without actual proof of workers' compensation coverage). At another point in his testimony, Mr. Lawson intimates he could not recall whether he saw the license number on the card before ATS commenced work or whether the license was relevant to his decision to hire ATS. This evidence is clearly germane to the issue of whether Fernandez should be estopped from claiming he was Lawson's employee under section 2750.5. In our view, a jury appropriately resolves the conflicting inferences in the evidence. Consequently, the court erred in finding as a matter of law section 2750.5 applied.[5]

*773 B. Application of OSHA Regulations
The trial court never reached the factual questions of whether OSHA regulations were violated. Instead relying on Rosas, the court found as a matter of law OSHA regulations inapplicable to homeowners in the context of tree trimming for the homeowner's non-commercial, personal benefit.
As explained below, we cannot endorse the application of the absolute rule announced in Rosas. The conclusion OSHA regulations can never apply to homeowners who hire tree-trimmers is, in our view, overly broad and not persuasive under the circumstances of this case.
In Rosas the homeowners asked their landscape gardener, Rosas, to trim a tree branch overhanging the roof of their house. The homeowners agreed to pay Rosas a fee for the tree trimming in addition to the fee they paid him for the regular maintenance of their yard. The tree Rosas agreed to trim was in excess of 15 feet tall[6] and thus Rosas was required, but did not possess, a license for the work. Rosas fell and was injured while attempting to trim the tree. (Rosas v. Dishong, supra, 67 Cal.App.4th at pp. 817-818, 79 Cal.Rptr.2d 339.) The homeowners' insurer declined Rosas workers' compensation claim because he had not met the minimum hours required by section 3352, subdivision (h). Rosas then sued the homeowners alleging causes of action for general negligence and premises liability. (Id. at p. 818, 79 Cal.Rptr.2d 339.)
Preliminarily, the Rosas court ruled as a matter of law, under section 2750.5 the unlicensed Rosas was an employee, not an independent contractor for the purposes of civil tort litigation. (Id. at pp. 818-823, 79 Cal.Rptr.2d 339.) The court next turned to the issue of whether OSHA regulations applied to homeowner employers who hire tree trimmers and concluded OSHA did not apply in that context. The Rosas court articulated two reasons to support its conclusion: (1) tree trimming constitutes a "household domestic service" and is thus excluded from OSHA under section 6303, subdivision (b); and (2) homeowners are unlike other employers obliged to comply with OSHA because homeowners do not expect OSHA would apply to them when they hire someone to trim a tree for their non-commercial personal benefit and because homeowners are ill-equipped to understand and comply with specialized OSHA regulations. (Id. at pp. 823-827, 79 Cal.Rptr.2d 339.) We examine each of these rationale seriatim.

1. Tree trimming Under the "Household Domestic Service" Exclusion.
OSHA does not apply to all places of employment[7] or types of employment. Section 6303, subdivision (b) defines "employment" for OSHA purposes as: "the carrying on of any trade, enterprise, project, industry, business, occupation or work, including all excavation, demolition, and construction work, or any process or operation in any way related thereto, in which any person is engaged or permitted to work for hire except household domestic service." (Lab.Code, § 6303, subd. (b); (italics added).)
*774 As Rosas points out, OSHA does not define the phrase "household domestic service," nor does California case law or legislative history provide any relevant insight into the meaning of the exclusion. (Id. at pp. 823-824, 79 Cal.Rptr.2d 339.) Consequently, for guidance on "household domestic services" Rosas looked to the definition of "household occupations" under the wage and hour orders, specifically California Code of Regulations, title 8, section 11150, subdivision (2)(c), which provides: "`[h]ousehold occupations' means all services related to the care of persons or maintenance of a private household or its premises by an employee of a private householder. Said occupations shall included ... gardeners ...." (Italics added.) Rosas then looked to federal case law, specifically, Marshall v. Cordero (D.Puerto Rico 1981) 508 F.Supp. 324, 325, which considered the terms "domestic service employee" within the Fair Labor Standards Act and concluded a domestic service employee is a person "who perform[s] home-related, noncommercial labor in private homes and whose work would normally be done by members of the family unit, but for the availability of outside paid help and the homeowner's ability to pay. `In other words, these are persons paid to do chores that are normally carried out in most homes by the family members themselves, without formal pay.'" (Rosas v. Dishong, supra, 67 Cal.App.4th at pp. 825-826, 79 Cal.Rptr.2d 339, quoting Marshall v. Cordero, supra, 508 F.Supp. at p. 325.) Thereafter, in ruling tree trimming is categorically excluded from OSHA as a "household domestic service," Rosas observed "[t]ree trimming is a task often performed by members of a household."
Rosas's rationale is troublesome in several respects. First, contrary to the implication in Rosas, tree trimming is not necessarily synonymous with gardening. Fernandez presented the uncontroverted declaration of a licensed landscaping expert and certified arborist who declared: "Trimming a palm tree is not the equivalent of gardening and it cannot be done by an average homeowner or even an experienced gardener or even a regular tree trimmer." Because tree trimming and gardening are not equivalents, then the fact a "gardener" is defined as a household occupation in the wholly unrelated context of the wage and hour orders, does not convince us tree trimming falls under OSHA's household domestic service exclusion.
Second, Rosas's analysis ignores analogus federal OSHA regulations pertaining to the "domestic household employment activities" exclusion. Title 29 of Code of Federal Regulations, section 1975.6, provides:
"As a matter of policy, individuals who, in their own residences, privately employ persons for the purpose of performing for the benefit of such individuals what are commonly regarded as ordinary domestic household tasks, such as house cleaning, cooking, and caring for children, shall not be subject to the requirements of the Act with respect to such employment." (Code of Fed. Regs, tit. 29, § 1975.6.)
While the handful of examples (i.e., house cleaning, cooking and caring for children) of domestic household employment activities listed in Code of Federal Regulations, title 29, section 1975.6, may not have been intended to comprise an exhaustive list, it is certainly instructive. Indeed, the focus of the Federal OSHA exclusion centers on activities commonly regarded as "ordinary domestic tasks." Based on the expert evidence presented in this case, there is no question trimming a 50-foot palm tree cannot be regarded as an ordinary domestic task.
Finally, in view of the evidence presented on the record before us, we cannot endorse Rosas's conclusion tree trimming is a household domestic service because it is a task performed by members *775 of the household. In our view, this conclusion is far too broad. We recognize there may be instances where a homeowner may trim a tree safely and successfully. However, there are many other instances, like this one, where a homeowner would be incapable because of the size or type of the tree to engage in tree trimming. Here, the expert arborist declared palm trees are the most difficult to climb and trim, and can only be safely pruned by a tree trimmer with extensive training and experience in palm tree trimming. The expert also cautioned that unless a homeowner is trained to trim such trees under no circumstances should a homeowner attempt to trim a palm tree similar to the one in this case.
To ascertain whether an average member of the household would engage in a particular task, (making it subject to the "household domestic service" exclusion) the nature of the activity must be examined. The focus should not, as suggested by Lawson and the homeowners in Rosas, be strictly limited to the issue of whether the task is "dangerous" or "serious." Indeed, there are dangerous and serious activities such as wood chopping and minor household repairs, which average and ordinary homeowners safely engage in and would therefore fall within the "household domestic service" exclusion. Instead, the focus should be on the degree of skill or expertise involved and the training and competence required to safely and successfully perform the task.
Consequently, the test for whether a tree trimming qualifies as a household domestic service should be whether an average member of the household has the skill and competence to undertake the activity. Under this test, the task of tree trimming (depending on the size and type of the tree and number of trees involved) may sometimes, but not always, qualify as a household domestic service. Ultimately, determining whether an average homeowner possesses the skill and competence to trim a particular tree or trees is a question of fact which should be decided on a case-by-case basis.
In this context, the laws pertaining to contractors' licenses provide objective guidance on how to make the determination. The contractors' state licensing laws are designed to protect the public from dishonest contractors and to provide a certain measure of assurance of the licensed contractor's competence. (Hunt Building Corporation v. Bernick, supra, 79 Cal.App.4th at pp. 217-218, 93 Cal. Rptr.2d 883.) The statutory requirement for state contractors' license to trim a tree greater than 15 feet in height implies trimming a tree over 15 feet in height requires a degree of competence, skill and training, not necessarily required for tree smaller trees.
Expert evidence may also assist in assessing whether an average homeowner has the skill to perform the task. Here, the uncontroverted expert evidence demonstrated an average homeowner could not have trimmed the 50-foot palm tree involved in this case, and Lawson presented no evidence they possessed the skills and competence for the task.
We decline to adopt Rosas's conclusion on the scope of the "domestic household service" exclusion. Under the particular circumstances of this case, in view of the uncontroverted evidence, we conclude trimming of Lawson's 50-foot palm tree was not within the OSHA exclusion as a matter of law.[8]

*776 2. Application of OSHA to Homeowners.
Turning to the second reason articulated in Rosas (and by the trial court here) for refusing to apply OSHA regulations, Rosas concludes homeowners are unlike other employers because they do not expect OSHA would apply when they hire someone to trim a tree for their noncommercial personal benefit and because homeowners are unprepared to understand and comply with specialized OSHA regulations.
This rationale is premised on case law and statutes from other jurisdictions. Rosas observed other states have interpreted the OSHA regulations to apply only to certain types of employers, that is, employers engaged in business. (Rosas v. Dishong, supra, 67 Cal.App.4th at pp. 825-826, 79 Cal.Rptr.2d 339.) Rosas intimates a similar construction of the term "employer" under California law, noting "California ... has historically emphasized business, industry and trade in defining OSHA coverage...." (Id. at p. 826, 79 Cal. Rptr.2d 339.)
Our difficulty with this rationale is the term "employer" under California OSHA law is broadly defined under statute and has never been limited to "business entities" or "business" employers. (See Lab. Code, § 6304;[9]Johnson v. A. Schilling & Co. (1959) 170 Cal.App.2d 318, 322-324, 339 P.2d 139 [owner of real property held to be an OSHA "employer"].) Homeowners have never been categorically excluded from OSHA in California. Neither Rosas nor Lawson have convinced us to fashion through case law an exception to OSHA, which the Legislature is in the proper position to create.
This notwithstanding, we are not unsympathetic to Rosas's arguments homeowners do not anticipate OSHA would apply to them and they are not prepared to comply with complicated OSHA regulations. However, here the burden on the homeowner could have been avoided by hiring a contractor possessing a valid license to perform the work.[10] When a homeowner hires a licensed contractor, the contractor is deemed an independent contractor. As noted elsewhere in this opinion, unless the homeowner controls the details of the work, it is the independent contractor (not the homeowner) who shoulders the burden of OSHA compliance. (Lopez v. University Partners, supra, 54 Cal.App.4th at pp. 1126, 1130, 63 Cal. Rptr.2d 359; Smith v. ACandS, Inc., supra, 31 Cal.App.4th at pp. 89-92, 37 Cal. Rptr.2d 457.) Concomitantly, where a homeowner hires an unlicensed contractor for work requiring a license, the homeowner accepts the obligation of OSHA compliance.
In sum, under the unique circumstances of this case, we decline to follow Rosas. We therefore conclude the summary judgment was improperly granted and this matter must be remanded to the trial *777 court for the jury to resolve factual questions whether OSHA regulations were violated.

III. Other Contentions
In addition to Fernandez's claims under section 2750.5 and OSHA, he asserted theories of liability for violation of "ANSI" tree trimming safety standards and respondeat superior.

A. Application of "ANSI" Standards.
"ANSI" is an acronym for American National Standards Institute. "ANSI" standards constitute "safety requirements for pruning, trimming, repairing, maintaining, and removing trees...." (ANSI Z133.1-1994, subd. 1.1.) "ANSI" is a voluntary standard intended as a guide to federal, state and municipal authorities in drafting their regulations. The standard is also intended:
"[T]o apply to any employer engaged in the business, trade or performance of tree pruning, trimming, repairing, maintaining, removal or brush cutting who hires one or more persons to perform such work. It is also intended through voluntary use, as a standard reference for safety requirements for those engaged in pruning, trimming, repairing, maintaining, or removing trees or cutting brush." (Id. at subd. 1.3.)
On appeal, Fernandez asserts there is a triable issue of fact as to whether Lawson, as his employer, violated ANSI Z133.1. We disagree.
Fernandez concedes ANSI has not been adopted under California law or the relevant municipality in this case. Fernandez further admits Lawson's liability, if any, for violating ANSI must be based on a claim of general negligence. However, Fernandez's general negligence cause of action was dismissed. Consequently, his ANSI claim is no longer viable after Fernandez dismissed the general negligence claim.

B. Respondeat Superior
We need not address the merits of Fernandez's argument Lawson is vicariously liable for ATS's failure to comply with OSHA in view of our conclusion Lawson's obligation to comply with OSHA is direct.

DISPOSITION
The judgment is reversed. The matter is remanded to the trial court for further proceedings in accord with the views expressed in this opinion. Appellant is entitled to costs on appeal.
We concur: LILLIE, P.J., and PERLUSS, J.
NOTES
[1] All statutory references are to the Labor Code unless otherwise indicated.
[2] The presumption of employee status can only be rebutted by, among other factors, proof the person performing the work has a valid contractors' license for the activity. (Lab.Code, § 2750.5, subd. (c).)
[3] The worker may be estopped from claiming employee status based solely on the contractor's misrepresentation of the license status:

(1) where the injured worker has participated in or had knowledge of the fraud (see Mars v. Wedbush Morgan Securities, Inc. (1991) 231 Cal.App.3d 1608, 1616, 283 Cal.Rptr. 238 [an agent may be responsible for its principal's fraud where agent knows of or participates in the fraudulent act]; or (2) where the worker is in "privity" with the contractor (Rinaldi v. Workers Compensation Appeals Board (1988) 199 Cal.App.3d 217, 224, 244 Cal.Rptr. 637).
[4] Likewise, triable questions of fact exist on the issue of whether Fernandez is bound by any alleged misrepresentation of Lascano concerning ATS' license status. While the evidence in the record before this court shows Fernandez never spoke directly with Lawson, the question of whether Fernandez should be deemed to have participated in the misrepresentation remains open. The record lacks evidence on whether Fernandez participated in the fraud by failing to disclose the truth of the situation to Lawson; the record is silent on whether (1) Fernandez was aware of the license requirement; (2) Fernandez knew ATS did not hold a requisite license and knew Lascano failed to inform Lawson ATS did not have a license for the work; and (3) Fernandez was aware of the representations concerning the license on ATS' business card. The jury must resolve these issues.

Issues of fact also remain on the issue of whether Fernandez was in "privity" with ATS. In our view, privity may exist not only where the worker makes or participates in the misrepresentation on the license status, but also where the worker and the contractor have a sufficiently close relationship where an "identification of interest" exists between the two parties so as to represent the same legal rights. (See Gikas v. Zolin (1993) 6 Cal.4th 841, 849, 25 Cal.Rptr.2d 500, 863 P.2d 745; Lynch v. Glass (1975) 44 Cal.App.3d 943, 948-949, 119 Cal.Rptr. 139; cf. Rinaldi v. Workers Compensation Appeals Board, supra, 199 Cal.App.3d at 224, 244 Cal.Rptr. 637.)
[5] The jury's resolution of this issue may be dispositive. If the jury finds Lascano misrepresented ATS's license status and Fernandez is thereby estopped from claiming he was the employee of Lawson, then Fernandez will be deemed an employee of ATS only and ATS will be treated as an independent contractor. As an independent contractor, ATS, not Lawson would be responsible for compliance with OSHA, unless Fernandez demonstrates Lawson exercised control over the details of the work. (Lopez v. University Partners (1997) 54 Cal.App.4th 1117, 1126, 1130, 63 Cal.Rptr.2d 359 [duty to provide a safe workplace imposed only on worker's immediate employer or those who contract for the services of the immediate employer, but retain control over the work; OSHA has no application in any personal injury action except as between an employee and his own employer]; Smith v. ACandS, Inc. (1994) 31 Cal.App.4th 77, 89-92, 37 Cal.Rptr.2d 457.)
[6] The case does not identify the type of tree or its exact height.
[7] "Place of employment" is defined as "any place, and the premises appurtenant thereto, where employment is carried on, except a place the health and safety jurisdiction over which is vested by law in, and actively exercised by, any state or federal agency other than the division." (Lab.Code, § 6303, subd. (a).)
[8] In reaching this conclusion, we note, but reject, Fernandez's argument tree trimming is not a "household domestic service" because OSHA regulations include safety standards for tree trimming. Fernandez implies that if tree trimming were intended to be excluded from OSHA as domestic household service, then OSHA regulations would be entirely silent on the subject of tree trimming. We disagree. Tree trimming services are provided in a wide variety of business, commercial and public contexts. OSHA regulations for tree trimming are therefore necessary to govern instances where such services are provided in contexts other than for a private homeowner. Consequently, the fact such regulations exist does not automatically mean tree trimming must always fall outside OSHA's "household domestic service" exclusion.
[9] Section 6304 provides: "`Employer' [under OSHA] shall have the same meaning as in Section 3300." Section 3300 defines employer as: "(a) The State and every State agency, (b) Each county, city, district, and all public and quasi public corporations and public agencies therein, (c) Every person including any public service corporation, which has any natural person in service, (d) The legal representative of any deceased employer."
[10] It is not difficult for an average homeowner to verify a contractor's licensing status. The state contractors' licensing board has a 1-800 telephone number and a web site through which one can check the status of a license.